APEX CONCRETE CO., Inc., Appellant,

v.

Max E. BRAY, Appellee.

No. 438.

Supreme Court of Alaska.

Oct. 1, 1964.

---

John M. Stern, Jr., of Stern & Gucker, Anchorage, for appellant.

Francis J. Nosek, Jr., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

The defendant-appellant, Apex Concrete Co., hereinafter referred to as Apex, appeals from an adverse decision in the superior court granting the plaintiff-appellee, Max Bray, judgment in the sum of $3,056.04 on a salary claim.

The appellant conducts a summer and early fall concrete business at Anchorage, and on May 31, 1960, hired the appellee as office manager and dispatcher for its business at an agreed salary of $600 per month. Bray testified at the trial, and the trial court so found, that late in December 1960 or early in January 1961 he entered into a further agreement with one Fred Wheeler, who was then president and general manager of Apex. Under this latter agreement Bray's monthly salary was to be increased by $200 commencing January 1, 1961, but payment of the additional salary was not to be made until Apex got into the full swing of its 1961 summer operation and could put itself in a stronger financial position.

No payments for the added remuneration claimed by Bray had been paid by Apex through April 30, 1962. Early in May 1962 Wheeler negotiated a sale of his interest

in Apex and asked Bray to prepare a list of accounts payable as of April 30. Bray complied and at the bottom of the list added his name for an account payable of $3,200. Wheeler subsequently gave the list of accounts to one James Flood who on May 17, 1962, purchased Wheeler's stock interest in Apex and took over the management of the company.

On the day before Wheeler transferred his interest to Flood, Bray prepared an Apex paycheck to himself for the first half of May. The check was reckoned on a salary of $800 per month and was signed by Wheeler. A similar check covering Bray's salary for the last half of May, at $800 per month, was signed by Flood and issued to Bray on June 1, 1962. Flood testified that it had been resolved between Wheeler and himself, before the transfer of interest in Apex, that there was no basis for Bray's extra salary claim listed with the accounts payable. He also testified that he did not discover until about the end of the first week in June that Bray had been paid for May more than his regular salary at $600.

It appears that, even though Flood disclaimed any liability for the Bray back salary account and refused to pay him more than $600 per month, he did request him to stay on with Apex for a short time to train the man who was to replace him. In the meantime Bray had filed this action for recovery of the additional salary alleged to be due him, and Flood told him to add his claim for June salary to the pending action. Bray terminated his employment with Apex on June 24, 1962.

Ray Stithem, who owns forty-five per cent of the stock of Apex and is its secretary-treasurer, testified that the quality of Bray's work did not warrant a $200 increase in his salary and that Bray spent some of Apex's time attending to personal business dealings of Wheeler in scrap metal and the sale of sacked cement to Apex and others. The purpose of this testimony concerning work performed by Bray for Wheeler personally seems to have been to lay a basis for the allegations of Apex in a third party complaint against Wheeler and another enterprise of his, U. S. Alaska Corporation, that whatever salary might be found owing to Bray should have to be paid by Wheeler or U. S. Alaska Corporation.

■ One of the issues raised by Apex is that the trial judge should have disqualified himself from trying the case, because the following statement contained in his pretrial order indicates that he had prejudged the case:

> "The real problem here is that the plaintiff had an agreement with Apex Concrete Company; later other parties became the stock holders for the company and claim that plaintiff's work was done for a former stockholder of the company and not for the company and that the company is not liable for any wages which may be due to the plaintiff."

This excerpt from the record standing alone might lead one to believe that the trial judge had precluded himself from impartially determining a basic issue in the case, namely, whether Apex had agreed to raise Bray's salary to $800 per month either before or after Wheeler sold out. Reading on further in the record, however, we find that the trial judge made it quite clear that he never had any intention to prejudge the case.

At the commencement of the trial, counsel for Apex filed written objections to the subject statement contained in the pretrial order. He concluded his objections with this suggestion and request:

> "If the trial judge has pre-judged the issue of an agreement with Apex, then there is no sense in going to trial. Defendant respectfully requests, if this be the case, that the case be set again for jury trial or without jury before a different judge."

We regard the foregoing written remarks of counsel as an invitation to the trial judge

to state his position and then to proceed accordingly. This he did, as witness his comments from the bench:

"Now certainly I had no intention whatsoever to pre-judge the case. There wouldn't be much point in my coming here and sitting on the case if I had pre-judged it, and I have not so pre-judged it. In order to clear up any claim that there may be along that line, and I may say that I think that reading the pre-trial order as a whole, there can't be said that I had pre-judged it, but in order to clear up any objection that there may be, I have inserted the words, 'claims he' after the word, 'plaintiff', and before the word, 'had', so it will read that, 'The real problem here is that the plaintiff claims he had an agreement with Apex Concrete Company; later other parties became the stockholders for the company and claim that plaintiff's work was done for a former stockholder * * *', and so forth. The plaintiff may proceed."

Again in a memorandum opinion delivered at the conclusion of all the evidence the trial judge reaffirmed his conception of the primary issue involved in the case when he stated:

"The principal question in this case remains as it has always been—Did Apex through its president and general manager, Mr. Wheeler, agree with Plaintiff to pay Plaintiff $800 per month as salary commencing January 1st, 1961? I find that it did. * * *"

1. Swick v. Seward School Bd., 379 P.2d 97, 102 (Alaska 1963); Veal v. Newlin, Inc., 367 P.2d 155 (Alaska 1961).

2. Parks v. Brown, 368 P.2d 220, 222 (Alaska 1962).

3. The specifications of error for which we found in the record no pertinent findings by the court are the following:
"4. The Trial Court erred in finding that Wheeler consented to the back wages by acceptance of the list of accounts payable as of April 30, 1962."

■ We find no error in the failure of [7] the trial judge to disqualify himself to try the case. In this connection Apex has also interjected an argument in its brief that it was error for the trial court not to set aside the pretrial order for the reason that it did not properly reflect the contentions of the parties and order a new pretrial conference. This issue was not raised in the statement of points on appeal, nor is it mentioned in the specification of errors; therefore, we need not consider it.[1]

■ Eleven of the thirteen errors specified by Apex are directed at findings alleged to have been made by the trial court. The first specification states merely that "the findings by the Trial Court are clearly erroneous." This charge of error is so general that it provides us with nothing meaningful to consider.[2] Three of the specifications, which are set forth in the margin,[3] relate to findings which the trial court never made, at least we have not been able to find them in the record. Absent the findings claimed to have been made, we have nothing to rule upon.

■ The twelfth specification of error charges that "the court erred in finding that there was not fraud[4] between Bray and Wheeler." There was no evidence of fraud adduced at the trial and therefore the trial court was correct in its finding that there was no inference of fraud raised sufficient to meet the requisite burden of proof of that allegation. Wheeler did not appear at the trial and none of the defense witnesses testified regarding fraud or illegality. Bray testified positively that there had been

"7. The Trial Court erred in finding that Mr. Ray Stithem consented to the increased wage."
"8. The court erred in finding that Bray requested Stithem to enter his claim on the books of Apex."

4. Apex raised four affirmative defenses in its answer to Bray's complaint. One of these was that the debt claimed by Bray for wages was secured by fraud and illegality.

no agreement or collusion with Wheeler to create a fraudulent salary claim against Apex.

■ ■ As for the remainder of the specifications of error relating to findings made by the trial court, none of them state with the particularity required by Supreme Court Rule 11(a) (6) [5] wherein the findings were erroneous.[6] Apex does not even identify the findings as to where they appear in the record, whether in the memorandum opinion or in the formal written findings of fact and conclusions of law filed in the case. Under the circumstances we could refuse to consider the errors specified. However, since counsel for Bray, the appellee, made no objection in his brief to the failure of Apex to comply with the provision of Supreme Court Rule 11(a) (6) set forth in note 5 of this opinion, we did examine the record and have determined that there was no clear error in the formal written findings of the trial court. In other words, viewing the evidence in its entirety and bearing in mind that the trial judge had the advantage of seeing and hearing the witnesses of both parties as they testified before him on disputed matters, we are not convinced that a mistake has been committed requiring us to reverse the findings and judgment of the trial court.[7]

■ Apex also specifies as error the action of the trial court in dismissing the third party claim against Wheeler. At the conclusion of the evidence, counsel for the third party defendant Wheeler moved that the third party claim be dismissed as to his client. The trial court took the motion under advisement and ruled on it in its memorandum opinion as follows:

"Apex has claimed that it should have judgment against Wheeler for the amount of any judgment in favor of the Plaintiff against Apex. If any substantial proof had been offered to the effect that Plaintiff had done any great amount of work for Wheeler to the detriment of his duties to Apex, the claim might be valid. However, no such proof was offered. Any work done by Plaintiff for Wheeler personally was minimal. There is no evidence at all upon which I might base a finding as to the value of that work. As previously mentioned it might be infered [sic] that such work as Plaintiff did for Wheeler personally was done under some agreement whereby that work was traded for an advantageous price on cement sold by Wheeler to Apex. Apex has completely failed in its burden of proof to establish any personal claim against

5. Supreme Court Rule 11(a) (6) provides in part: "When findings are specified as error, the specification shall state as particularly as may be wherein the findings of fact and conclusions of law are alleged to be erroneous."

6. The specifications of error mentioned at this point in the opinion, *supra*, read as follows:
"3. The Judge erred in finding that Bray informed Wheeler that he could not continue to work at the rate of $600.00 per month, and that Wheeler agreed that Bray's salary would be $800.00 per month commencing January 1, 1961."
"5. The court clearly erred in finding that Bray was entitled to any back wages."
"6. The court erred in finding that Wheeler consented to the increase in sal-

ary by signing the check for the month of May 1 through 15, 1962."
"9. The court clearly erred in finding that the cash position of Apex was poor and unable to make the payments of Bray if, in fact, owed."
"10. The court erred in finding that there was consideration for the amounts claimed by Bray, and that the plaintiff fully performed his duties."
"13. The court erred in finding that Bray's wages for June 1 through 24, 1962, were to be [at the rate of] $800.-00 per month."

7. See *Ogden v. State*, Opinion No. 252, 395 P.2d 371 (Alaska 1964); Chirikoff Island Cattle Corp. v. Robinette, 372 P.2d 791, 792–794 (Alaska 1962); Link v. Patrick, 367 P.2d 157, 159 (Alaska 1961).

Wheeler. It might be argued that Wheeler, in selling his stock, agreed to personally assume the liability of the Plaintiff. It is sufficient to say that there is no evidence at all to support that argument. Defendant, Wheeler's, motion to dismiss the third-party complaint as against him should have been granted and is now granted."

We find ample support in the record for what the trial court had to say on this issue and for its order dismissing the third party claim against Wheeler. Bray admitted that he did some work for Wheeler personally at the Apex office but stated that it was minimal in comparison with his work for Apex. Stithem, on the other hand, testified that Bray was doing considerable personal work for Wheeler, but on cross-examination admitted that he had never actually seen Bray doing work for Wheeler, and that his periods of observation were only on occasional visits to the Apex plant before eight o'clock in the morning, during the lunch hour, after working hours, or on Saturdays. We find that the trial court did not err in dismissing the third party claim against Wheeler.

Judgment affirmed.