**MERL.F. THOMAS SONS, INC., and Home Insurance Company, Appellants,**

v.

**STATE of Alaska, Appellee.**
**No. 450.**

Supreme Court of Alaska.
Oct. 29, 1964.

Warren A. Taylor of Taylor & Bullerwell, Fairbanks, for appellants.

George N. Hayes, Atty. Gen., and David B. Ruskin, Asst. Atty. Gen., for appellee.

Before NESBETT, C. J., AREND J., and von der HEYDT, Superior Court Judge.

NESBETT, Chief Justice.

On March 3, 1961, appellee State of Alaska invited bids for the clearance of a highway right of way through approximately 30 miles of wilderness on the west side of the Susitna River from Talkeetna to the Chulitna River. When the bids were opened on March 28, 1961, it was determined that the appellant Thomas Sons, Inc. was low bidder in the sum of $109,920.00. However, Thomas did not receive notification that it had been awarded the contract until April 6, 1961.

In the meantime, on March 31, 1961, Thomas had begun shipping the heavy equipment it would need in performing the contract to Talkeetna from Fairbanks via the Alaska Railroad. This was done in anticipation of being awarded the contract

and in the knowledge that the possibility of a successful ice crossing of the Susitna River with heavy equipment was lessened with the passage of each day of spring weather. Thomas' equipment arrived at Talkeetna on April 5, 1961. On that day appellee wired Thomas that it had been awarded the contract and requested it to transport its equipment to Talkeetna immediately, before the ice went out. The wire also advised that a letter of award and contract documents would follow. Thomas received the wire on April 6, 1961, on which date it had made its first unsuccessful attempt at an ice crossing. Appellee was advised of this fact by wire.

Thomas made several unsuccessful attempts to cross the Susitna River between April 6th and 17th but the river ice had thinned making a crossing with heavy equipment impossible.

Pursuant to the requirements of the invitation, Thomas' bid was accompanied by a bid bond in the amount of 5 per cent, underwritten by appellant Home Insurance Company. The bid bond guaranteed that if awarded the contract, Thomas would enter into a written contract with appellee for the performance of the highway right of way clearance work.

On April 17, 1961, Thomas advised appellee that all attempts to cross the river had failed and that "to attempt to carry through with the contract would be so costly in both time and money that it could not meet the schedule for completion and costs would rise beyond its quoted bid." The contract was returned to appellee unsigned.

Appellee then sued to recover $5,496.00 which was 5 per cent of appellant's bid, as liquidated damages under the provisions of the bid bond. Among other defenses Thomas pleaded that it and all other bidders contemplated crossing the Susitna River on the ice at Talkeetna in order to get their equipment to the job site as there were no bridges across the river and that it acted with diligence in an attempt to get to the job site but was prevented by an act of God. Thomas counterclaimed to recover the sum of $8,905.44 expended by it in transporting its equipment to. Talkeetna and return to Fairbanks and in wages, room and board for workmen and airplane rentals. After hearings had been held on various motions for summary judgment and to dismiss appellants' counterclaim, such motions were granted in appellee's favor.

Appellants' brief is confused and misarranged. After some study we have concluded that the principal question to be decided is whether the trial court erred in granting summary judgment in view of Thomas' allegation that all bidders contemplated that the transportation of equipment to the job site would be accomplished by crossing the river ice at Talkeetna; that due to the lateness of the bid openings and early spring rains, performance in the contemplated manner and within the contemplated time schedule became impossible, thus excusing Thomas from entering into the written contract.

Appellee contends that the legal question is much simpler; that by the terms of its bid bond, accompanying its bid proposal, Thomas agreed to enter into a written contract to perform the clearance work within 15 days of being notified of its award of the contract or be liable for the payment of liquidated damages in the amount of 5 per cent of its bid; that since it is conceded that Thomas was awarded the contract and failed to enter into the written agreement there is no dispute as to any material fact and the trial court properly granted summary judgment.

The trial court adopted appellee's view of the case and interpreted the facts as constituting breach of a contract to enter into a contract. It awarded appellee the sum of $5,496.00 liquidated damages because of the difficulty involved in establishing actual damages.

The basic question to be decided is whether we shall adopt for Alaska the relatively recently developed doctrine of frustration or supervening impossibility of performance of contracts. The doctrine is clearly explained and applied in Parrish v.

Stratton Cripple Creek Mining & Development Co.[1] There a contract between the mining company and a trucking company gave the trucking company the exclusive right to haul all ore produced on the mining company's property and destined for a mill operated by a third party. The mill went bankrupt and ceased operations. The court held that the contract between the mining company and the trucking company was subject to the implied condition that if, without fault of either party, the mill ceased to be available, the parties should be excused from performance. In so holding the court said:

> " * * * it is well settled by the adjudicated cases in England and the United States that where parties enter into a contract on the assumption that some particular thing essential to its performance will continue to exist and be available for the purpose and neither agrees to be responsible for its continued existence and availability, the contract must be regarded as subject to an implied condition that if, without the fault of either party, the particular thing ceases to exist or be available for the purpose, the contract shall be dissolved and the parties excused from performing it." [2]

The principle is recognized and discussed at some length in Straus v. Kazemekas[3] where a contract to deliver Russian rubles was held not to have been frustrated even though an embargo on their importation continued for approximately a year and one-half after the making of the contract. In Johnson v. Atkins[4] the doctrine of frustration was applied to a contract to deliver copra to a buyer in Colombia where that nation cancelled permission to bring additional copra into the country after the contract had been partially fulfilled.[5] In Clarksville Land Co. v. Harriman[6] performance of a contract to drive logs down a stream to the Connecticut River in the spring was excused when the court found that it was the understanding of the parties that the logs were to be driven down the stream only if there was adequate water for that purpose. An unseasonable, unanticipated drop in the water level was held to excuse performance.[7]

In the case before us appellants' amended answer alleged in effect that all bids were submitted on the assumption that the contract would be awarded in time for the successful bidder to move the required heavy equipment to the job site over the Susitna River at Talkeetna and that appellee was aware of that fact. It is not disputed that there were no bridges anywhere on the river. The only way the successful bidder could move his equipment to the point where right of way clearance was to begin was to negotiate an ice crossing of the river. Appellants point to the fact that although bids were opened on March 28th no award was announced until at least April 5th. In the meantime early spring rains were eating the river ice away at a daily rate of one to five inches. Appellee explains that the delay was unavoidable because of the necessity of obtaining federal approval and that in any event it had not become impossible for Thomas to perform as an ice crossing might have been negotiated at Hurricane 70 miles to the northward.

1. 116 F.2d 207 (10th Cir. 1940), cert. denied, 312 U.S. 698, 61 S.Ct. 738, 85 L.Ed. 1132 (1941).
2. Id. at 209–210.
3. 100 Conn. 581, 124 A. 234 (1924).
4. 53 Cal.App.2d 430, 127 P.2d 1027, 1029 (1942), wherein the court cites and relies upon Restatement, Contracts § 288 and earlier California cases.
5. See Jones v. Fuller-Garvey Corp., 386 P.2d 838, 840 (Alaska 1963), where this court applied a similar doctrine in holding that where the purpose of a lease was totally frustrated by a supervening event not provided for in the lease, the lease was dissolved and the parties excused from performance.
6. 68 N.H. 374, 44 A. 527 (1895).
7. For a full discussion of the doctrine see 6 Williston, Contracts §§ 1931–79 (rev. ed. 1938).

■ We hold that it was error to grant summary judgment under the circumstances. Thomas' allegation that all parties contemplated that equipment would be moved to the job site over the river ice at Talkeetna raised a question of fact material to the defense of frustration or supervening impossibility of performance as defined earlier in this opinion. If the defense is proven on a trial of the case Thomas should be excused from entering into the contract which was the subject of his bid proposal.

In attempting to differentiate between difficulty of performance and frustration or impossibility of performance, the trial court might well be guided by Professor Williston's analysis:

"The true distinction is not between difficulty and impossibility. As has been seen, a man may contract to do what is impossible, as well as what is difficult. The important question is whether an unanticipated circumstance, the risk of which should not fairly be thrown upon the promisor, has made performance of the promise vitally different from what was reasonably to be expected."[8]

The second point raised by appellants is that since there was no proof of actual damage in the record it was error for the trial court to award liquidated damages in the amount of 5 per cent of appellant's bid, as provided for in the bid proposal.

■ Since it has been determined that the case will be remanded for trial this point has become academic to some extent. However, it may be helpful at the trial if we now point out that the trial court's finding was that it would be difficult to ascertain actual damages in a case of this nature and that the liquidated sum of $5,496.00 provided for in the contract was a reasonable forecast of the damages likely to occur in the event of breach. In our opinion this was a correct statement of the law.[9]

The last point to be considered is appellants' claim that it was error for the trial court to dismiss the counterclaim contained in their second amended answer, affirmative defense and counterclaim.

The claim seeks reimbursement in the sum of $8,905.44 for expenses incurred in moving Thomas' equipment from Fairbanks to Talkeetna and return to Fairbanks. The pleading alleges that bids were opened on March 28, 1961; that Thomas was not notified that it was low bidder but that it assumed that it was low bidder and on March 31st commenced to move its equipment to the established ice crossing of the river; that all of the equipment had arrived at the proposed crossing by April 5, 1961. The following day Thomas received the wire from appellee which stated:

"Commissioner Downing advises award made you on clearing Susitna River to Chulitna River request you move equipment immediately before ice goes out letter award and contract documents to follow."

It is then alleged that by reason of appellee's insistence that Thomas proceed to Talkeetna that it was required to expend the money claimed.

■ It is obvious from a first reading that the counterclaim does not state a claim upon which relief could be granted. Thomas moved the equipment to Talkeetna entirely on its own initiative and before any representation of any nature had been made to it by appellee, therefore no claim in contract was stated and the trial court was correct in dismissing the counterclaim.

■ In their brief appellants argue that appellee was negligent in setting March 28th as the bid opening date when it knew or should have known that the ice might go out at Talkeetna at an early date. This

8. 6 Williston, op. cit. supra note 7, at 5511, citing Straus v. Kazemekas, 100 Conn. 581, 124 A. 234, 239 (1924).

9. Fleischman v. Rahmstorf, 226 F. 443 (9th Cir. 1915); Restatement, Contracts § 339 (1932).

argument will not be considered when raised for the first time on appeal.[10]

The judgment is set aside and the case remanded for further proceedings in accordance with the views expressed herein.

10. Lumbermens Mut. Cas. Co. v. Continental Cas. Co., 387 P.2d 104, 109 (Alaska 1963); Pollastrine v. Severance, 375 P.2d 528, 531 (Alaska 1962).