Casimir SANUITA and Donald W. Holton,
Appellants,

v.

COMMON LABORER'S AND HOD CAR-
RIERS. UNION OF AMERICA,
LOCAL 341, Appellee.

No. 502.

Supreme Court of Alaska.

May 21, 1965.

Casimir Sanuita and Donald W. Holton, in pro. per.

Ronald G. Benkert, of Groh & Benkert, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

NESBETT, Chief Justice.

The complaint requesting injunctive relief in this case was not signed by appellee's attorney, contrary to the requirements of Civil Rule 11.[1]

Appellants' first point on appeal is that failure to sign the complaint deprived the court of jurisdiction.

The record discloses that a complaint, praying for a temporary restraining order and injunctive relief against the appellants for creating disturbances in the union hall maintained by appellee, was filed on July 18, 1962. The complaint was signed immediately after the prayer for relief by R. E. McFarland as secretary-treasurer of appellee union. Following McFarland's signature was a typewritten verification prepared for his signature. This verification was signed as required and was followed by a notarization duly executed.

Below and to the left of the notarization there was typed:

"HARTLIEB and RADER

Attorneys for Plaintiff

BY:———————

Gordon W. Hartlieb"

No signature had been affixed on the line provided.

Likewise filed on July 18, 1962, and apparently concurrently with the filing of the complaint, was a Notice and a Motion For Preliminary Injunction, both of which were signed by Gordon W. Hartlieb of Hartlieb and Rader, Attorneys for Plaintiff. Also filed on the same date were a number of affidavits in support of the motion, including one by R. E. McFarland.

The requirements of Alaska's Civil Rule 11 have been embodied in Rule 11 of the Federal Rules of Civil Procedure since adoption of those rules and prior to that in Federal Equity Rules 21 and 24.[2]

In requiring the signature of counsel, the overlying purpose of the rule has been to insure the good faith of counsel by holding them strictly accountable for all allegations contained in the complaint.[3] This purpose seems to be fully and plainly set out in the present wording of the rule.

For the failure of counsel to sign a pleading, the rule provides that, "it *may* be stricken as sham and false and the action

---

1. Civ.R. 11 states in pertinent part:
   "Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. * * * The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a pleading is not signed or is signed with the intent to defeat the purpose of this rule, it may be stricken as sham and false and the ac-

tion may proceed as though the pleading had not been served. For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action. Similar action may be taken if scandalous or indecent matter is inserted."

2. 2 Moore, Federal Practice para. 11.01 [2] (2d ed. 1964).

3. Goodwin Film & Camera Co. v. Eastman Kodak Co., 222 F. 249, 250–51 (2d Cir. 1915); United States ex rel. Foster Wheeler Corp. v. American Sur. Co., 25 F.Supp. 225, 226 (E.D.N.Y.1938).

*may* proceed as though the pleading had not been served." [Emphasis ours.] It will be noted that the above wording leaves the application of any sanction for failure to sign a pleading to the discretion of the judge.

In Holley Coal Co. v. Globe Indemnity Co.[4] the court held that striking the pleading was within the sound discretion of the court, but since no reason other than oversight appeared for the failure of the defendant to sign its original answer, the court did not abuse its discretion in refusing to strike the first amended answer.

In the case before us the complaint recounted in some detail a series of incidents in which appellants purportedly acted to disrupt union meetings, destroy union property, destroy the effectiveness of appellee local union and commit libel and slander against officials of appellee local. Although the complaint was not signed by counsel, a Motion For Preliminary Injunction, filed on the same date as the complaint, recounting the incidents mentioned in the complaint in abstract form, was signed by counsel.

It is not contended that counsel's failure to sign the complaint was willful or anything other than an oversight. A place was prepared for such signature. Appellants did not draw the trial court's attention to the failure of counsel to sign the complaint nor did they move that the complaint be stricken for failure to comply with the rule. Since the trial court had no oppor-

tunity to pass on the matter, we shall not consider it for the first time on appeal.[5]

Appellants' next point is that, although the complaint was signed by R. E. McFarland as secretary-treasurer of Appellee Common Laborer's and Hod Carriers Union of America, Local 341, there was no allegation that McFarland had authority to so act for that appellee.

The answer is that in the absence of a contradiction by appellants of McFarland's authority to sign the complaint, his signature in his capacity as an officer of the union was a sufficient allegation of authority under the circumstances.[6] Our attention has not been invited to any evidence produced at the trial which would show that McFarland did not have authority to sign the complaint.

Appellants cite Kassly Undertaking Co. v. Flexible Co.[7] for the proposition that the suit would be dismissed for failure of a plaintiff affiant to set out the facts of his authority as an agent. The fact is that this case held the opposite of appellants' representation—that the suit would *"not"* be dismissed on the ground advanced.

Appellants next argue that the court erred in granting injunctive relief.

As has been stated the complaint alleged numerous acts of appellants, which it was claimed caused harm to appellee union, such as: committing acts of violence within the union hall, disrupting union meetings, creating trouble and confusion during work

4. 186 F.2d 291, 295 (4th Cir. 1950). See also In re Legon, 85 F.Supp. 946 (S.D. N.Y.1949).

5. Merl F. Thomas Sons, Inc. v. State, 396 P.2d 76, 79–80 (Alaska 1964); Schenderline v. Robertson, 394 P.2d 395, 397 (Alaska 1964); Lumbermens Mut. Cas. Co. v. Continental Cas. Co., 387 P.2d 104, 109 (Alaska 1963); Pollastrine v. Severance, 375 P.2d 528, 531 (Alaska 1962).

6. Civ.R. 9(a) states:
"(a) *Capacity*. It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party, except to the extent required to show the jurisdiction of the court. When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge."
See Brown v. Music Inc., 359 P.2d 295, 301 (Alaska 1961).

7. 313 Ill.App. 653, 40 N.E.2d 621 (1942).

calls, filing numerous lawsuits against the local union, and attempting to physically harm an officer of the union, in addition to those acts mentioned earlier in this opinion. In addition to the verified complaint these allegations were supported by six affidavits.

Under this heading appellants argue first that since the complaint did not allege that the acts asserted were causing irreparable injury, it was error to grant injunctive relief.

In paragraph XXIV the complaint alleged: "That irreputable harm, damage and injury will follow and be done to plaintiff unless the acts and conduct of the defendants above complained of are enjoined."

Appellants argue that there is no such word as "irreputable" and that the court is not at liberty to place upon it an interpretation not known to the law. We believe that the wording of this paragraph makes it plain enough that the pleader intended to allege and would be understood by the average reader to be alleging "irreparable harm, damage and injury", and that the error in transcribing "irreparable" as "irreputable" was not sufficient to obscure the pleader's true meaning.

It is next argued that injunctive relief was improper because there was an adequate remedy at law. Argument in support of this claim is that on two prior occasions appellee had availed itself of an existing adequate remedy at law and had caused appellants to be punished for similar acts.

Appellants' argument falls of its own weight. The allegations contained in the verified complaint and affidavits were sufficient to support injunctive relief if established to the satisfaction of the court and belied the effectiveness of any previous attempts to obtain adequate relief from appellants' acts.

Appellants next contend that the judgment herein is void because service of the proposed Findings of Fact, Conclusions of Law and Judgment was not made on appellants. As a result they claim to have been illegally deprived of their right under Civil Rule 78(b) to a five day period within which to "serve a written detailed statement of objections." [8]

The fact is that appellants were not served with copies of the proposed Findings, Conclusions and Judgment and apparently did not learn of the judgment until after it had been signed.

On the other hand, appellants have not made a showing of how they have been prejudiced by the terms of the judgment as it read and how they would have moved to modify it if they had been served according to the rule.

In its main provisions the judgment enjoins appellants from being on the local union premises except during work calls; requires that while on the premises they not create any disturbance; that they be enjoined from using obscene and other offensive language on the premises and that they conduct themselves in an orderly manner and refrain from acts of physical violence toward any person on the premises.

There appears to be nothing unreasonable about the judgment on its face and appellants have not shown prejudice resulting from failure of appellee to comply with Civil Rule 78(a). In a similar fact situation in Briggs v. Kelly [9] we said:

"Non-compliance with subdivisions (a) and (b) of Rule 78 does not in itself require us to reverse the judgment below and order it to be set aside. The

8. Civ.R. 78(b) states:

"(b) *Objections.* Within 5 days after service of any of the documents mentioned in subdivision (a), a party may serve a written detailed statement of objections to any such document and the reasons therefor. If objections are served within the time specified herein, the court may thereafter require the attorneys interested to appear before it, or it may sign the document as prepared by counsel for the successful party or as modified by the court."

9. 376 P.2d 715 (Alaska 1962).

appellant must first show that she has been prejudiced in some substantial way. \* \* \*"[10] [Footnote omitted.]

We have declined to attempt to consider and decide the matters concerning free speech mentioned by our colleague in a dissenting opinion for the reason that those matters were not made issues on appeal by appellants' Statement of Points on Appeal as required by Supreme Court Rule 9(e),[11] nor were they set out in the Specifications of Error or covered by the Questions Presented for Review and Summary of Argument as required by Supreme Court Rule 11 (a) (5), (6) and (7). They were mentioned only casually or not at all in appellants' main argument and were not briefed by appellee.

The judgment below is affirmed.

RABINOWITZ, Justice (dissenting in part).

I dissent from the majority's refusal to decide the only issues of substance that appellants, without the benefit of counsel, have managed to raise.[1]

The majority's conception of the issues raised in this appeal has resulted in avoidance of decision upon substantial free speech issues. I am of the opinion that appellants are correct in their assertion that portions of the lower court's permanent injunction infringe upon their rights of free speech under Article I, Section 5 of the Alaska Constitution and the First and

Fourteenth Amendments to the United States Constitution.[2]

The record reflects a protracted history of acrimonious relations between appellants and appellee while appellants were members of appellee union and subsequently during the period in which appellants were attempting to organize a separate rival union. Appellants' activities culminated in appellee's filing this injunction action and the lower court's granting, on April 8, 1964, of a permanent injunction against appellants.

In granting appellee a permanent injunction the lower court in part enjoined appellants, while upon appellee's premises during work call periods,[3] from:

"using loud, boisterous, obscene, lewd, inflammatory, slanderous, vulgar language. \* \* \*

\* \* \* \* \* \*

"[And] from \* \* \* heckling or interrupting any person making a work call on behalf of said organization."

These portions of the lower court's permanent injunction are repugnant to appellants' rights of free speech under Article I, Section 5 of the Alaska Constitution, and under the First and Fourteenth Amendments to the United States Constitution. See National Ass'n for the Advancement of Colored People v. Button, 371 U.S. 415, 437–38, 83 S.Ct. 328, 9 L.Ed.2d 405, 420–21 (1963); Near v. Minnesota ex rel. Olson, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); Parker v. Columbia Broadcasting

---

10. Id. at 717.

11. Supreme Ct.R. 9(e) states:
    "*Statement of Points.* If the appellant does not designate for inclusion the complete record and all the proceedings and evidence in the action, he shall serve and file with his designation a concise statement of the points on which he intends to rely on the appeal. Otherwise such statement of points shall be served and filed prior to the time that the preparation of the record on appeal is to be completed. The court will consider nothing but the points so stated."

1. Subsequently in this opinion and appendix there will be set forth the reasons why I have concluded that appellants have

properly raised the following issues having sufficient merit for adjudication by this court, namely, the infringement of appellants' rights of free speech; the propriety of enjoining slander; the lower court's jurisdiction; and the propriety of enjoining the commission of crimes.

2. Alaska Const. art. I, § 5 provides: "*Freedom of Speech.* Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right."

3. The record discloses that appellee's premises are used as a hiring hall for both its own members and nonmembers as well.

Sys., 320 F.2d 937, 939 (2d Cir. 1963), aff'd, 331 F.2d 297 (2d Cir. 1964); Crosby v. Bradstreet Co., 312 F.2d 483, 485 (2d Cir.), cert. denied, 373 U.S. 911, 83 S.Ct. 1300, 10 L.Ed.2d 412 (1963). See also Rosicrucian Fellowship v. Rosicrucian Fellowship Non-Sectarian Church, 39 Cal.2d 121, 245 P.2d 481, at page 495 (1952), cert. denied, 345 U.S. 938, 73 S.Ct. 828, 97 L.Ed. 1365 (1953) where the court said:

> "It is established that an injunction will not be granted where the restraint interferes with freedom of speech. See * * * Dailey v. Superior Court, 112 Cal. 94, 44 P. 458, 32 L.R.A. 273; Magill Bros. v. Building Service etc. Union, 20 Cal.2d 506, 127 P.2d 542; In re Wood, 194 Cal. 49, 227 P. 908; Orloff v. Los Angeles Turf Club, 30 Cal.2d 110, 117, 180 P.2d 321, 171 A.L.R. 913." [4]

Under the above portions of the lower court's permanent injunction, appellants now, at the peril of further judicial sanctions, must on their own determine whether their speech is "loud", "boisterous", "obscene", "lewd", "inflammatory", "slanderous", "vulgar", "heckling", "interrupting" or choose to remain silent. It is precisely such a judicially imposed prior restraint upon freedom of speech which is prohibited by both the Alaska and Federal Constitutions. The quoted portions of the permanent injunction should be stricken by this court.

Appellants additionally attack that part of the permanent injunction which purports to enjoin their use of "slanderous" language upon the somewhat related ground that equity will not enjoin the publication of a slander. There is considerable authority to the effect that an injunction is an improper remedy against the publication of a slander or libel. See Dayton v. McGranery, 92 U.S.App.D.C. 24, 201 F.2d 711, 713 (D.C. Cir. 1953); American Malting Co. v. Keitel, 209 F. 351, 357 (2d Cir. 1913); Birnbaum v. Wilcox-Gay Corp., 17 F.R.D. 133, 139–40 (N.D.Ill.1953); Marlin Firearms Co. v. Shields, 171 N.Y. 384, 64 N.E. 163, 165–66, 59 L.R.A. 310 (1902). The case of Montgomery Ward & Co. v. United Retail, Wholesale & Department Store Employees [5] is typical of the authorities in this area. At page 48 of its opinion in 79 N.E. 2d, the court said:

> "The first general principle is that equity does not have jurisdiction to enjoin the commission of crimes and libels; and the second general principle is that the constitutional guaranty of free speech as a general rule prohibits both the courts and the legislature from putting previous restraints on publications. That there are exceptions to these general principles is recognized, but the plaintiff in bringing its suit for such relief must take upon itself the burden of showing facts which bring it within these exceptions.
>
> "The rule long in force was that in the absence of the showing of a violation of some property right, or some breach of trust or of a contract, an injunction was not available to prevent actual or threatened publications of a defamatory character." [6]

---

4. Our superior court in this case was prohibited from imposing the above quoted portions of the permanent injunction by virtue of the First Amendment which is made applicable to state courts under the Fourteenth Amendment. See New York Times Co. v. Sullivan, 376 U.S. 254, 265, 84 S.Ct. 710, 11 L.Ed.2d 686, 697 (1964); Edwards v. South Carolina, 372 U.S. 229, 235, 83 S.Ct. 680, 9 L.Ed.2d 697, 702 (1963); Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).

5. 400 Ill. 38, 79 N.E.2d 46 (1948).

6. See also Annot., 47 A.L.R.2d 715 (1956), where at pages 726–27 it is stated that:
   "The most formidable obstacle to the grant of injunctive relief against personal defamation in this country has been the feeling of the courts that to allow such relief would infringe the constitutionally guaranteed freedoms of speech and of the press by setting up what would be, at least potentially, a system of judicial censorship. * * *
   * * * * * *

Since the record does not disclose any exceptions which would permit the enjoining of slanderous language, the lower court's prohibiting "slanderous" language was also improper in light of these authorities.[7]

Now to return to the question of the majority's construction of this court's appellate rules. There are prior decisions of this court in which it has evinced a willingness to apply the provisions of Supreme Court Rule 52. Rule 52 provides that:

> "These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by this court where a strict adherence to them will work surprise or injustice."

Perhaps the outstanding example of this court's prior willingness to dispense with strict compliance in regard to its appellate rules is the case of Lapham v. Town of Haines[8] where it is stated at page 377:

> · "Appellants have filed no statement of points in connection with this appeal as required by Supreme Court Rule 9 (e), nor does their specification of errors comply with Rule 11(a) (6).
>
> : "We are disposing of this appeal on what we consider to be the main issue recognized by both parties in their briefs, namely, whether the shutting off of appellants' water supply by appellee was a wrongful act."

Adopting a similar approach this court in Bailey v. Fairbanks Independent School Dist.[9] stated at page 529:

> "Although the questions before this court are not clear because the appellants failed to comply with Supreme Court Rule 11(a) (5), we will decide the case upon the issues we believe to have been raised by appellant * * *."

More recently in the case of In re Mackay[10] this court stated at page one of its opinion:

> "[R]espondent * * * has petitioned for a rehearing on nine separate grounds. The respondent's brief does not deal with these grounds in any detail and ignores some of them entirely. However, we shall discuss the six grounds which we deem to have sufficient merit to warrant our consideration."

There are other instances in which this court has relaxed the necessity for strict adherence to its appellate rules: Steward v. City of Anchorage, 391 P.2d 730, 732 (Alaska 1964); Clay v. Sandal, 369 P.2d 890, 893 (Alaska 1962); Dickerson v. Geiermann, 368 P.2d 217, 218 (Alaska 1962); Edwards v. Franke, 364 P.2d 60, 62 (Alaska 1961).

Also pertinent is the language of this court appearing in Orbeck v. Wheeler Con-

---

> "The fact that if equity interfered to enjoin threatened defamatory publications the defendant would be deprived of the right to trial by jury which would be available to him in a legal action has frequently been referred to as a ground for refusing the equitable relief."

7. Appellants also assert that the lower court lacked jurisdiction to enjoin them contending that its jurisdiction has been pre-empted by virtue of the provisions of the Labor-Management Reporting and Disclosure Act of 1959 and the Labor Management Relations Act of 1947. The record discloses that appellants at the time in question were not members of appellee union and it appears, therefore,

that the LMRDA of 1959, is not applicable. See 29 U.S.C.A. §§ 402(o), 411(a) (2), 412 (Cum.Supp.1964). Assuming appellants were members of appellee union, there is nothing in the provisions of the act to indicate that Congress intended to vest exclusive jurisdiction thereunder in the federal courts, see Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). Therefore the lower court had jurisdiction over the subject matter of this action.

8. 372 P.2d 376 (Alaska 1962).

9. 370 P.2d 526 (Alaska 1962).

10. Opinion No. 279 (Alaska, January 30, 1965).

struction Co.[11] where at pages 782–83 it is stated that:

> "This court is not inclined to cut off rights of appellate review because of some failure on the part of a litigant to comply with the rules, if to do so would work surprise or injustice or would result in countenancing plain error apparent on the face of the record."[12] [Footnote omitted.]

Although I am of the opinion that appellants have adequately raised the issues I have alluded to in this opinion (see appendix), I am also of the view that under the approach of the above authorities this court had ample precedent to conclude that these same issues were adequately presented and contained sufficient merit to warrant adjudication upon their merits.[13] The above decisions of this court are particularly appropriate where appellants are without counsel and are attempting to obtain this court's decision upon free speech issues.[14]

For the reasons stated herein, I dissent from the majority's failure to adjudicate the issues discussed in this separate opinion and would modify the permanent injunction as previously indicated. In all other respects I concur with the majority opinion.

### APPENDIX

The issues which I consider to be properly before this court and which the majority has declined to decide will be treated separately with reference primarily to the parties' briefs.

## I. AS TO JURISDICTION

Under their specification of errors appellants assert the following:

> "The court erred in failing to dismiss the complaint in the face of the fact that:
>
> "(a) The sole prayer of the complaint is for relief in a matter which has been pre-empted by the Federal Government through enactment of the Taft Hartley and National Labor Relations Acts;
>
> "(b) There exists in the court no jurisdiction, by either statute or Rule, to grant the relief prayed;
>
> \*   \*   \*   \*   \*   \*
>
> The court ignored the fact that it has no jurisdiction to restrain the defendants from entering the union hall \* \* \*."

Under their summary of argument, as well as in their argument, appellants contend that:

> "The COMPLAINT prays for relief which the trial court was estopped to grant, by reason of the fact that the National Labor Relations Board has pre-empted authority over the question as to who may be barred from union halls. The trial court had no authority.
>
> \*   \*   \*   \*   \*   \*
>
> The court is estopped from consideration of an action which embraces the relief prayed herein, by reason of the

11. 394 P.2d 781 (Alaska 1964).

12. Also of interest is Apex Concrete Co. v. Bray, 395 P.2d 514 (Alaska 1964), where this court indicated that it would look beyond the statement of points on appeal to determine whether an issue has been raised. More particularly at page 517, the court stated:
> "This issue was not raised in the statement of points on appeal, nor is it mentioned in the specification of errors; therefore, we need not consider it."

13. The majority has also declined the suggestion to request additional briefs on any of the issues I consider to have been raised by appellants. Therefore, I have refrained from commenting upon the issue of the propriety of enjoining the commission of crimes. On this point (as well as the other three mentioned herein), I would have preferred additional briefing and, therefore, have concluded to omit discussion of this issue until a more appropriate occasion.

14. *Contra*, Watts v. Seward School Bd., 395 P.2d 372, 376 (Alaska 1964), cert. granted and case remanded, 381 U.S. 126, 85 S.Ct. 1321, 14 L.Ed.2d 261 (May 3, 1965), where this court refused to consider constitutional issues involving free speech on the grounds that the issues were not adequately treated in appellants' brief.

fact that in enacting the Taft Hartley, N.L.R.A. and L.M.R.D.A. acts the Federal Government pre-empted the field of decisions concerning who may, and who may not, enter a union hall, thereby leaving the State courts without jurisdiction."

Subsequently at pages 25 and 26 of their brief, appellants again reiterate their contention that the trial court had no jurisdiction by virtue of the federal enactments. Appellee answers appellants' assertion as to lack of jurisdiction in the following manner:

"Appellant also contends that our state courts have no power to enjoin activity of a disruptive nature which is taking place on union premises. It is well to note at this point that the defendants are not members of Local 341 * * *. Certainly defendants are not suggesting that their activity in using profane language, smashing private property, and threatening the physical well-being of others is federally protected under the NLRB." See Youngdahl v. Rainfair, Inc., 355 U.S. 131, 138, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957).

## II. AS TO THE ENJOINING OF SLANDER

In their points on appeal, appellants state:

"The court erred in failing to give recognition to the fact that at all of the times herein there was available to the plaintiffs a speedy and adequate remedy at law, and, such being the case, injunction is not a proper remedy."

Appellants, after repeating this point in their specification of errors, assert the following in their argument:

"It appears obvious that injunction is not the proper remedy in the case before us. * * *

 *       *       *       *       *       *

" 'Equity does not have jurisdiction to act for the sole purpose of restraining utterances of libel and slander, regardless of whether the defamation is personal or relates to property rights.' "

In support of this general proposition appellants cite the following authorities:

"Oil Conservation Eng'r Co. v. Brooks Eng'r Co., 52 F.2d 783, 785, 786 (6th Cir. 1931); Montgomery Ward & Co. v. United Retail, Wholesale & Department Store Employees, 400 Ill. 38, 79 N.E.2d 46, 49 (1948); Marlin Firearms Co. v. Shields, 171 N.Y. 384, 64 N.E. 163, 59 L.R.A. 310 (1902); Moore v. City Dry Cleaners & Laundry, 41 So. 2d 865, 873 (Fla.1949); Voltube Corp. v. B. & C. Insulation Products, 20 N.J. Super., 250, 89 A.2d 713, 716 (1951); Esskay Art Galleries v. Gibbs, 205 Ark. 1157, 172 S.W.2d 924, 927 (1943); 28 Am.Jur. Injunctions §§ 132, 134 (1959)."

Appellants' contentions in regards to the issue of enjoining libel or slander are not answered by appellee in its brief. Counsel for appellee make the following statement:

"In aid of the court, and for the sake of clarity in this brief, counsel will attempt to set out what they believe to be the pertinent questions presented for review."

Admittedly counsel for appellee was faced with the formidable task of analyzing appellants' brief which was prepared without the assistance of counsel. On the other hand, I am of the opinion that this court is not limited to counsel's conception of what are the pertinent questions presented to this court for review.

## III. AS TO ENJOINING THE COMMISSION OF CRIMES

In their points on appeal appellants state:

"The court erred in failing to give recognition to the fact that at all of the times herein there was available to the plaintiffs a speedy and adequate remedy at law, and, such being the case, injunction is not a proper remedy."

Under their specification of errors appellants assert that:

"The court lacked jurisdiction in the matter of the actions taken:

 *       *       *       *       *       *

"2. Because injunction is an improper remedy where there exists a speedy and adequate remedy at law * * *."

Under their summary of argument and argument appellants contend as follows:

"That the acts complained were criminal offenses under both municipal and state law, and, therefore the plaintiff had available at all times a speedy and adequate remedy at law.

* * * * * *

" 'Equitable jurisdiction to enjoin and restrain assaults, batterys, insults and molestation of the person is generally refused.' "

In support of this general proposition appellants cite the following authorities:

Kwass v. Kersey, 139 W.Va. 497, 81 S.E. 2d 237, 47 A.L.R.2d 695 (1954); 28 Am.Jur. Injunctions §§ 131, 157 (1959); Orloff v. Los Angeles Turf Club, 30 Cal. 2d 110, 180 P.2d 321, 171 A.L.R. 913 (1947); City of New Orleans v. Liberty Shop, 157 La. 26, 101 So. 798, 799, 40 A.L.R. 1136 (1924).

Appellee in its brief answers appellants' contentions in regards to the issue of enjoining the commission of crimes, arguing in part:

"Furthermore, even if some of the defendants' acts were of a criminal nature, that would not prevent an injunction, for to prosecute each of these violations would entail a multiplicity of lawsuits."

In support of the above appellee cites Alper v. Las Vegas Motel Ass'n, 74 Nev. 135, 325 P.2d 767, 769–70 (1958); State v. Robertson, 63 N.M. 74, 313 P.2d 342, 345 (1957).

## IV. AS TO THE ENJOINING OF FREE SPEECH

In their specification of errors appellants assert that:

"The court lacked jurisdiction in the matter of the actions taken:

* * * * * *

"7. Because the court acted in violation of the rights of the defendants under the DUE PROCESS and EQUAL PROTECTION OF THE LAW clauses of both State and Federal Constitutions."

In their argument appellants state the following in regards to the Labor-Management Reporting and Disclosure Act of 1959:

"It provided that there shall be freedom of speech and assembly, without restraint by the union.

* * * * * *

"It seems obvious that the granting of an injunction herein infringes the appellants' Constitutional right of free speech, and abridges their right of trial by jury."

In support of the above quoted language appellants cite Orloff v. Los Angeles Turf Club, 30 Cal.2d 110, 180 P.2d 321, 171 A.L.R. 913 (1947). Note also that immediately above the quoted language appellants cite Montgomery Ward & Co. v. United Retail, Wholesale & Department Store Employees, 400 Ill. 38, 79 N.E.2d 46, 49 (1948), which case deals extensively with the question of injunctions and infringement of free speech.

Subsequently appellants state:

"It is clear that the granting of an injunction herein infringes appellants' right of free speech and abridges their right of trial by jury."

In support of the above appellants again cite the Orloff case. (Note: Appellants also cite Salzhandler v. Caputo, 316 F.2d 445 (2d Cir.), cert. denied, 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963), which case deals with the right of speech under the LMRDA of 1959.)

Appellee makes no reference to this issue of free speech in its brief.

Upon the basis of the foregoing I concluded that appellants had adequately presented these issues for review upon their merits.