WILLIWAW LODGE, a partnership consisting of Willis Flooring Company and George Atkinson, Jr., Appellant,

v.

Bernard E. LOCKE, Appellee.

Bernard E. LOCKE, Cross-Appellant,

v.

WILLIWAW LODGE, a partnership consisting of Willis Flooring Company and George Atkinson, Jr., Cross-Appellee.

Nos. 3874, 3913.

Supreme Court of Alaska.

Oct. 12, 1979.

Hugh B. Wade, Steven P. Oliver, Wade & DuBrock, Anchorage, for appellant/cross-appellee.

Robert A. Mintz, Burr, Pease & Kurtz, Anchorage, for appellee/cross-appellant.

Before RABINOWITZ, C. J., BOOCHEVER, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

DIMOND, Senior Justice.

This case arose from a dispute involving an earnest money agreement dated April 21, 1976, in which Williwaw Lodge, a partnership, agreed to sell to Bernard Locke[1] a motel, restaurant and bar located near Lake Wasilla. The sale was to close 45 days from the date of the agreement. However, Locke refused to sign the closing papers on the grounds that he had had to make extensive repairs, and in addition, was frustrated in his attempts to transfer the bar liquor license to his name. He filed a lien on the property on July 21, 1976, for $47,832.00, the alleged amount of his repair costs.

On October 15, 1976, Williwaw Lodge brought suit in superior court to enforce a $10,000 forfeiture clause of the agreement and to obtain damages for slander of title allegedly caused by the lien. Locke counterclaimed, seeking (1) to recover damages for misrepresentation and unjust enrich-ment, and (2) to foreclose the lien. The superior court ruled, as a matter of law, tnat the lien was invalid, and also dismissed the slander claim. The jury returned a verdict in favor of Williwaw Lodge for $10,-000 for breach of contract, and also returned a verdict in favor of Locke for $35,-000[2] for repairs he had made on the premises. Both Williwaw and Locke have appealed.

I

## WILLIWAW'S APPEAL

Williwaw contends that verdict II awarding $35,000 to Locke is inconsistent with verdict I, which awarded $10,000 to Williwaw for Locke's breach of the purchase and sale agreement. There are at least two theories on which verdict II could be based: (1) an independent expressed or implied agreement to compensate for improvements, and (2) actionable negligent misrepresentation.[3] If there were evidence to support one or both of these theories of recovery, the verdicts would not be inconsistent.

There is evidence from which the jury could have found an independent express or implied agreement on the part of Williwaw to compensate Locke for improvements. There was repeated testimony by Locke that Willis, a partner in Williwaw, had assured him that he would be compensated for the cost of repairs from the proceeds of the suit Willis planned to file against Hataki, the previous defaulting purchaser. There was also evidence that at the time Willis made these representations he had been advised by his attorney that any suit against Hataki would be worthless; Willis

---

1. Locke was purchasing the property in conjunction with Jack and Ruth Jefford, who were also defendants in the resulting superior court action. However, they were removed from the litigation by stipulation of the parties.

2. Prior to the verdict, the parties had stipulated that all claims and counterclaims by and against the Jeffords would be dismissed with prejudice, and that any award in favor of Locke would be reduced by $11,000. Therefore, judgment entered on the general verdict was for $14,000, plus interest and attorney's fees, for Locke.

3. The jury was instructed on the tort of misrepresentation independent of Williwaw's breach of contract claim; therefore, under the instructions it would not have been inconsistent to find both a contract which Williwaw could enforce and a tortious misrepresentation by Williwaw. No objection to this manner of instruction appears in the record before us.

did not pass this information on to Locke. The testimony by Locke, if believed by the jury, was sufficient to support a finding that Williwaw had agreed to reimburse Locke for the repairs. Alternatively, this same evidence would support the verdict under the instruction on misrepresentation.[4]

Verdict II, the jury's award of $35,000 to Locke, may also be based on actionable negligent misrepresentation. There was evidence that Willis told Locke that the property had been "winterized." There was evidence that Locke relied on Willis's statement on winterization in deciding to accept the terms of the agreement. The evidence showed that Locke was unable to made a complete inspection of the lodge because the keys were not made available to him. This evidence, in light of the extensive, undisputed evidence that the lodge had not in fact been "winterized," would provide a sufficient basis for finding that Willis negligently misrepresented the condition of the lodge.

Williwaw's second point on appeal relates to the admission, over Williwaw's objection, of a letter to. the Alcoholic Beverage Control Board from Williwaw's attorney, Hugh G. Wade. In the letter, Mr. Wade stated that he was representing "Barney Locke and Jack T. Jefford with respect to their application for the transfer of the [liquor license] for Williwaw Lodge." Mr. Wade also stated in that letter that Mr. Locke and Mr. Jefford had "expended approximately $35,000 in renovation [sic] the lodge and repairing the heating and plumbing system in the lodge and motel." Williwaw's point on appeal is that the statement in the letter regarding the $35,000 spent on repairs was

hearsay, and was improperly utilized by the jury in determining the amount of Locke's repair costs, which the jury determined to be $35,000.

The trial court found that the letter was pertinent and admissible, partially on the ground that it tended to show whether Williwaw Lodge had breached its contractual obligation by not fulfilling its promise to assist Locke in acquiring a liquor license.

■ We have defined hearsay as
[e]vidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter asserted . . . .
*Meyst v. East Fifth Avenue Service, Inc.,* 401 P.2d 430, 437 n. 15 (Alaska 1965), *quoting* Uniform Rule of Evidence 63.[5] Thus, when the fact of the statement has independent legal significance, independent of the truth of the statement, the hearsay rule does not exclude evidence showing the statement was made.

■ Since the jury returned a verdict in favor of Locke for $35,000 representing the cost of his repairs to the lodge, and the same sum of $35,000 is mentioned in Mr. Wade's letter, the letter might well have been offered to establish the sum of $35,000 as the amount expended by Locke. If so, then the letter was hearsay and not admissible. However, there was extensive evidence of the amounts expended by Locke, and the testimony that Locke gave was supported by dated invoices for most of the expenses. There was, therefore, sufficient competent evidence, independent of Wade's letter, to support the verdict in favor of Locke for $35,000. Consequently, if it was

---

4. As the superior court noted in denying the motion for judgment n. o. v.:

Here the jury could find from the evidence . . . that a representation was made, that Hataki would be sued. . . . Certainly there were statements made that Mr. Willis made the statement based upon the stated facts then existing that he had been advised by counsel that there would not be a lawsuit pursued against Hataki, so that . . the jury could find from his statement that he knew at the time that it was not true . . .. Certainly as to its materiality, I don't think we have to discuss that, Mr. Locke did go

ahead and perform work. And as to a justification, and relied upon it, as I say Mr. Locke did, as a man skilled in manual trades, not in financial matters and the jury is entitled to take that into account . . . such that the jury could find that he was justified.

5. *Accord, Kristich v. State,* 550 P.2d 796, 802 (Alaska 1976); *P. H. v. State,* 504 P.2d 837, 843 (Alaska 1972); McCormick on Evidence § 249, at 588 (2d ed. E. Cleary 1972); Rule 801(c), Alaska Rules of Evidence, effective August 1, 1979.

 

error to admit the letter as hearsay, the error was harmless.[6]

## II

## LOCKE'S APPEAL

The agreement between Williwaw and Locke provided that $10,000 would be retained by Williwaw as liquidated damages if the sale did not go through. Locke contends on this appeal that Williwaw suffered no damages by the incompletion of the sale, and therefore it was improper for the jury to award any damages to Williwaw under the liquidated damages provision of the agreement.

On the other hand, Williwaw contends that actual damages did occur in that it suffered the loss of interest or rent, and the cost of repossession and sale and continuing cost of ownership such as insurance premiums and utility costs during the period between Locke's breach and Williwaw's ultimate sale to another party. The trial court found, and instructed the jury,[7] that the liquidated damages or forfeiture provision of the earnest money agreement providing for $10,000 to be paid as a result of noncompletion of the sale was reasonable.

In *Merl F. Thomas Sons, Inc. v. State*, 396 P.2d 76, 79 (Alaska 1964), we held that liquidated damages are proper where "it would be difficult to ascertain actual damages," and where the liquidated amount was "a reasonable forecast of the damages likely to occur in the event of breach." Since the amount designated in the contract forfeiture provision is not "all out of proportion to any injury"[8] to Williwaw, there is no basis for disturbing the superior court's finding that the amount was reasonable, or for setting aside the jury's verdict awarding $10,000 to Williwaw.

The judgment of the superior court is affirmed.

---

6. The letter was arguably admissible as evidence of the agreement by Williwaw to assist in securing Locke's liquor license. No effort was made to have the court excise the portion of the letter referring to the repairs.

7. The court instructed the jury, in part, as follows:

   Plaintiff claims that the earnest money deposit of $10,000 represents a liquidated, or agreed, amount which the parties agreed would represent fair damages to plaintiff if defendant should fail to perform the contract.

The court has determined that the amount of liquidated damages is reasonable if you find that plaintiff is entitled to prevail.

8. In *Jameson v. Wurtz*, 396 P.2d 68, 74 (Alaska 1964), this court held in considering the propriety of the contract's forfeiture clause:

   [W]here the contract involves land the buyer will be relieved from strict forfeiture if enforcement of the forfeiture would cause a loss to him all out of proportion to any injury that might be sustained by the seller.