ARBY W. ALPER, DBA DESERT ISLE MOTEL, A. SCHINDLER, DBA MATER MEA INN, WESTERN MOTELS INCORPORATION, A NEVADA CORPORATION, DBA MIRAGE MOTEL, CHESTER LYON AND MARTIN A. CLEMENS, DBA TUMBLEWEED MOTEL, AND OTTILIA VILLA, INC., A NEVADA CORPORATION, APPELLANTS, *v.* LAS VEGAS MOTEL ASSOCIATION, INC., A NEVADA CORPORATION, AND ROZELLA C. BROOMFIELD, RESPONDENTS.

No. 3989

May 14, 1958. 325 P.2d 767.

*Jones, Wiener and Jones,* and *D. Francis Horsey,* of Las Vegas, for Appellants.

*Zenoff and Magleby,* of Las Vegas, for Respondents.

## OPINION

By the Court, EATHER, J.:

This is an appeal from order of the court below holding these appellants in contempt of court for disregard of a temporary restraining order theretofore issued by the court. Appellants are operators of motels in Clark

County. The suit was brought by respondents to enjoin appellants from violation of Clark County ordinance No. 71 regulating motel advertising, secs. 2 and 4 of which provide:

"Section 2. It shall be unlawful for any owner or operator of any establishment within the scope of this Ordinance * * * to display or cause to be displayed any sign or signs which may be seen from a public highway or street, which sign or signs include in dollars and/or cents a statement relating to the rates charged at such establishments unless such sign or signs includes in letters and figures of similar size and prominence the following additional information: The number of rooms or units in the establishment and the rates charged for each; whether the rates quoted are for a single or multiple occupancy where such fact affects the rates charged; and the dates and hours during which such rates are in effect where such dates and/or times affect the rates charged.

"Section 4. It shall be unlawful for any owner or operator of any establishment within the scope of this ordinance to display or cause to be displayed any sign in connection with any such establishment relating to rates which shall have thereon any untrue, misleading, false or fraudulent representation."

The temporary restraining order in question (violation of which led to the contempt order) was issued July 27, 1956 and prohibited appellants from displaying advertising signs in violation of the quoted provisions of the ordinance. On August 3, 1956 respondents moved the court below for an order adjudging appellants in contempt for violating both secs. 2 and 4 of the ordinance. On August 10, 1956 the order was entered holding appellants guilty of contempt and fining each violating motel the sum of $500. From that order this appeal is taken.

Appellants challenge the propriety of the contempt order by attacking the restraining order upon which it was based. They contend: (1) that the ordinance was unconstitutional; (2) that, being a criminal ordinance, enforcement by injunction was improper.

Upon the constitutional issue, appellants do not question the power of the county to regulate motel advertising nor contend that the prohibitions of the ordinance constitute an improper mode of regulation. They contend that since the ordinance applies to motels and not to hotels, it violates that clause of sec. 1 of the Fourteenth Amendment of the United States Constitution which provides: "No state shall * * * deny to any person within its jurisdiction the equal protection of the laws."

Appellants concede that this constitutional provision does not preclude resort to classification for purposes of legislation. They contend, however, that such classification must be reasonable and rest upon a substantial difference or distinction which bears a just and reasonable relation to the legislation and that such legislation must operate equally, uniformly and impartially on all persons within the same class, citing 16A C.J.S. 314, Constitutional Law, sec. 505 (b) (2). They contend that in this case there is no reasonable basis for a difference in classification between motels and hotels and that the ordinance thus prescribes unequal treatment which amounts to a discrimination against motels.

In Pastone v. Commonwealth of Pennsylvania, 232 U.S. 138, 144, 34 S.Ct. 281, 282, 58 L.Ed. 539, the opinion of Mr. Justice Holmes states: "But we start with the general consideration that a state may classify with reference to the evil to be prevented, and that if the class discriminated against is or reasonably might be considered to define those from whom the evil is mainly to be feared, it properly may be picked out. A lack of abstract symmetry does not matter. The question is a practical one, dependent upon experience. The demand for symmetry ignores the specific difference that experience is supposed to have shown to mark the class. It is not enough to invalidate the law that others do the same thing and go unpunished, if, as a matter of fact, it is found that the danger is characteristic of the class named." And later: "Obviously, the

question so stated is one of local experience, on which this court ought to be very slow to declare that the state legislature was wrong in its facts."

To the same effect is Fifth Avenue Coach Co. v. New York, 221 U.S. 467, 31 S.Ct. 709, 55 L.Ed. 815, and Railway Express Agency v. New York, 336 U.S. 106, 69 S.Ct. 463, 466, 93 L.Ed. 533, where the court stated: "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." Also, Metropolitan Casualty Co. v. Brownell, 294 U.S. 580, 55 S.Ct. 538, 79 L.Ed. 1070.

From the record it may reasonably be inferred that it was in the operation of motels as distinguished from hotels that Clark County mainly encountered the evil which the ordinance sought to eliminate. This being so, the classification was not arbitrary and the ordinance may not be held unconstitutional under the requirement for equal protection of the laws.

Appellants next contend that the claimant below simply sought the enforcement of a criminal ordinance by injunction, which a court of equity had no power to accomplish unless there has been an invasion of a property right which equity will protect. They contend that no property right is involved here, but at most a speculative injury based upon loss of patronage which respondents expect to receive.

But equity will, in a proper case, act to restrain the use of criminal practices in business competition upon the principle that one lawfully engaged in business has a right to be free from the competition of illegal and criminal acts. Featherstone v. Independent Service Station Assn. (Texas Civ. App.), 10 S.W.2d 124; Glover v. Malloska, 238 Mich. 216, 213 N.W. 107, 52 A.L.R. 77; Choctaw Pressed Brick Co. v. Townsend, 108 Okla. 235, 236 P. 46; New York, N. H. & H. R. Co. v. Deister, 253 Mass. 178, 148 N.E. 590; Long v. Southern Express Co., (1912, D.C.) 201 Fed. 441; reversed on other grounds in 5 Cir. (1913), 202 Fed. 462, 120 C.C.A. 568. In the case

at bar, the record demonstrates that appellants' violations of the ordinance operated to divert trade and custom from respondents' motels to their own.

It would follow that the diverting of patrons by means of advertising such as here in question constitutes an invasion of property rights warranting the issuance of the injunction.

In this conclusion we do not reach the question as to whether in *all* cases invasion of property right is essential to issuance of an injunction to restrain an act made criminal by statute.

Appellants next contend that there is no evidence of the invasion of property rights in that the only evidence tending to show that patrons were diverted was hearsay evidence, admitted over the objection of appellants. The testimony in question was that of several witnesses respecting conversations had with prospective patrons of their motels. The statements objected to as hearsay were those of the prospective patrons which, in general, were to the effect that they could secure accommodations elsewhere for $5; that they knew this to be so since they had seen signs to this effect.

The significance of this testimony, however, lies not in the truth of the statements but in the fact that they were made. Whether in fact the prospective patrons could have obtained accommodations for $5 is of little consequence. What is significant is that they refused to accept the witnesses' accommodations, giving as their reason the fact that accommodations could be secured elsewhere at the rates advertised. It was not error, then, to admit the testimony.

Finally appellants contend that the record demonstrates that they complied with the court order and therefore were not in contempt. It appears that the "compliance" consisted in their removing the dollar

symbol from their signs, leaving the figures remaining. We agree with the trial court that this was no compliance. The reading motorist would undoubtedly conclude that figure referred to the rates. Even should appellants be sustained in their contention that all reference to rates "in dollars and cents" had been eliminated, the use of the figures was, then, misleading and a violation upon this score.

The appellants who operate the Tumbleweed Motel contend that in their case the court improperly held them in contempt since the only sign they maintain with reference to rates does not allude to their motel but to their "hotel annex." The court below concluded that what they chose to call a hotel annex was in fact a motel. We shall not disturb this conclusion. Whatever character the annex might have been able to claim had it been an independent operation, the fact that it was not independent but was annexed to a motel supports the finding and conclusion of the trial court that it was a part of a motel operation.

Affirmed.

BADT, C. J., and MERRILL, J., concur.