[Civ. No. 44362. Second Dist., Div. Three. Mar. 11, 1975.]

GAWZNER CORPORATION et al., Plaintiffs and Respondents, v.
DAVID D. MINIER, as District Attorney, etc.,
Defendant and Appellant.

**COUNSEL**

David D. Minier, District Attorney, and Patrick J. McKinley, Deputy District Attorney, for Defendant and Appellant.

West & Favor and Earle W. Favor for Plaintiffs and Respondents.

**OPINION**

**FORD, P. J.**—Defendant, District Attorney of the County of Santa Barbara, appeals from an order of the trial court denying his motion to dissolve a permanent injunction issued against him as district attorney.

The permanent injunction, which was issued on November 8, 1971, provided that defendant be permanently enjoined from enforcing the provisions of Business and Professions Code section 17564[1] against

---

[1]Business and Professions Code section 17564 provides as follows: "It shall be unlawful for any owner or operator of any establishment within the scope of this article, located within the State of California, to post or maintain posted on any outdoor or outside advertising sign pertaining to such establishment, any rates for accommodations in such establishment unless the sign shall have posted thereon the rates charged for all rooms, or other rental units or accommodations offered for rental, the number of rooms or other rental units offered for rental at each rate, and the number of persons accommodated at the rate posted. All posted rates and descriptive data required by this

"Miramar By the Sea, operated by Plaintiff Gawzner Corporation, and Mar Monte Beach Hotel, operated by Plaintiff Earl M. Miley and the Barbara Hotel, owned and operated by Plaintiff Earl M. Miley, and The Sea Breeze Motel, owned and operated by Plaintiff Stephen A. Zoldos, and The Tides Motel, owned and operated by Plaintiff Raymond Dutkowsky."

In support of its grant of a permanent injunction the trial court found that "hotels do not come within the classification of business establishments subject to the provisions of Section 17564 of the Business and Professions Code . . . ."[2] The trial court further found that Miramar By the Sea, Barbara Hotel and Mar Monte Beach Hotel are hotels. It was found that "motels are of the type of business establishment" subject to the provisions of Business and Professions Code section 17564, and that the Sea Breeze and the Tides are motels. However, the trial court held that section 17564 "constitutes an invalid, arbitrary and discriminatory exercise of the police power of the State of California because such statute denies motels the equal protection of the law and due process of law in that such statute places restrictions on motels that are not placed on hotels in preventing motels from displaying rate signs relating to their businesses."

Defendant did not appeal the trial court's judgment granting the permanent injunction. Thereafter, in August 1973 the Attorney General of the State of California issued an opinion analyzing section 17564 of the Business and Professions Code wherein it was concluded that the section "is a constitutional exercise of the state police power to prevent fraud and deception in the promotion of the general welfare of the public."[3] (56 Ops.Cal.Atty.Gen. 345.) On December 20, 1973, defendant filed his motion for dissolution of the permanent injunction.

article shall be in type and material of the same size and prominence as the aforesaid data. This section shall not be held to be complied with by signs stating the rate per person or bearing the legend 'and up.' "

[2]Business and Professions Code section 17563 provides that article 3, of which section 17564 is a part, "shall apply to operators and owners of motels, motor courts, and like establishments."

[3]It should be noted that in his opinion the Attorney General did not address himself to the question whether Business and Professions Code section 17564 denied motels equal protection of the law because it placed restrictions on motel rate advertising that were not placed on such advertising by hotels. Cases involving legislation in other jurisdictions are discussed, but that legislation governed rate signs of hotels and, motels indiscriminately.

In *Sontag Chain Stores Co. v. Superior Court,* 18 Cal.2d 92, 94-95 [113 P.2d 689], the Supreme Court ruled that a court which grants a permanent preventive injunction also has the inherent power to vacate or modify it "when the circumstances and situation of the parties have so changed as to render such action just and equitable." The court stated that the trial court's inherent power "may be exercised either when there has been a change in the controlling facts upon which the injunction rested, or the law has been changed, modified or extended, or where the ends of justice would be served by modification." (See *Union Interchange, Inc. v. Savage,* 52 Cal.2d 601, 604 [342 P.2d 249]; *Green Trees Enterprises, Inc. v. Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 788 [59 Cal.Rptr. 141, 427 P.2d 805].) ■ As was said in *Union Interchange, Inc. v. Savage, supra,* 52 Cal.2d at page 606, quoting from *Kendall v. Foulks,* 180 Cal. 171 at page 174 [179 P. 886], " 'It is a rule so universally followed and so often stated as to need only to be referred to that the granting, denial, dissolving or refusing to dissolve a permanent or preliminary injunction rests in the sound discretion of the trial court upon a consideration of all the particular circumstances of each individual case.' (Citation.) Such an order will not be modified or dissolved on appeal except for an abuse of discretion. [Citations.]"

The change in circumstances upon which the district attorney relied in seeking an order dissolving the permanent injunction granted herein was the fact that the state Attorney General had rendered an opinion to the effect that Business and Professions Code section 17564 was constitutional. The district attorney apprehended that since he was unable to enforce the statute against plaintiff motel owners because of the permanent injunction issued herein, he would be accused of discriminatory enforcement if he attempted to enforce the statute against other motel owners.

The issuance of an Attorney General's opinion on the constitutionality of a statute, even though well reasoned and informative, cannot be taken as a change in the law. Accordingly, it might be held that the trial court did not abuse its discretion in refusing to dissolve the permanent injunction in this case as no showing had been made of a change in circumstances sufficient to justify the dissolution of the injunction. However, we are impressed by the district attorney's dilemma. Business and Professions Code section 17564 is part of article 3, part 3, division 7, of that code, which is entitled "Motel and Motor Court Rate Signs." Article 3 was enacted in 1953 (Stats. 1953, ch. 975, § 1, p. 2462) and apparently no cases have been decided interpreting this legislation. If we were to decline to review the legislation on this appeal, the district

attorney would have to attempt to enforce the statute in question against a motel owner other than plaintiffs herein and await the result of trial and appellate proceedings before obtaining a definitive decision as to the constitutionality of Business and Professions Code section 17564. To avoid uncertainty with respect to the propriety of enforcement of the questioned legislation and to avoid doubt with respect to its proper interpretation, we review herein the questions raised on this appeal.

Section 17564[4] prohibits an outdoor or outside rate sign unless such a sign shows the rates charged for all rooms, the number of rooms offered for rent at each rate and the number of persons accommodated at the posted rate.[5] The section further provides that "[a]ll posted rates and descriptive data required by this article shall be in type and material of the same size and prominence as the aforesaid data." Signs stating the rate per person or bearing the legend "and up" do not constitute compliance with the section. Section 17565 prohibits maintenance of an outdoor or outside rate sign entirely "unless there shall be posted prominently and conspicuously in the area where guests are normally registered, a list of all rooms or other rental units offered for rental . . ., and the rates charged for each room when occupied by one person or two persons, and the rate charged for each additional occupant." Section 17566 provides that it is unlawful to post or maintain a rate sign "which shall have thereon any untrue, misleading, false or fraudulent representations." Section 17563 provides that article 3 "shall apply to operators and owners of *motels, motor courts, and like establishments.*" (Italics added.) Section 17568 makes it a misdemeanor to violate the provisions of article 3.

Section 17567 provides: "Nothing contained in this article shall be construed so as to require establishments within the scope of this article to have outdoor or outside signs. This article, however, shall be liberally construed so as to prevent untrue, misleading, false, or fraudulent representations relating to rates being placed upon outdoor or outside signs pertaining to such establishments."

As noted hereinabove, when the permanent injunction was granted the trial court found "[t]hat Section 17564 . . . constitutes an invalid, arbitrary and discriminatory exercise of the police power of the State of California because such statute denies motels the equal protection of the

[4]Unless otherwise provided, all references to code sections will be to the Business and Professions Code.
[5]See footnote 1 herein.

law and due process of law in that such statute places restrictions on motels that are not placed on hotels in preventing motels from displaying rate signs relating to their businesses."

■ It must first be determined whether it was the legislative intent that hotels be included within the provisions of Business and Professions Code sections 17560-17568. Those sections were added to the code in 1953. (Stats. 1953, ch. 975, pp. 2462-2463.)[6] In *County of Los Angeles* v. *Frisbie,* 19 Cal.2d 634, at page 642 [122 P.2d 526], the Supreme Court stated: "Excepting when clearly otherwise intended or indicated, words in a statute should be given their ordinary meaning and receive a sensible construction in accord with the commonly understood meaning thereof." (See *Wilson* v. *San Francisco Mun. Ry.,* 29 Cal.App.3d 870, 878 [105 Cal.Rptr. 855]; *City of El Monte* v. *City of Industry,* 188 Cal.App.2d 774, 780 [10 Cal.Rptr. 802]; *People* v. *One 1952 Mercury 2-Door Sedan,* 176 Cal.App.2d 220, 222 [1 Cal.Rptr. 245]; *Pac. Gas & E. Co.* v. *Shasta Dam etc. Dist.,* 135 Cal.App.2d 463, 468 [287 P.2d 841].)

While motels and auto courts appear to fall within the general category of hotels (see 27 Cal.Jur.2d, Innkeepers, § 6, pp. 255-256; 40 Am.Jur.2d, Hotels, Motels, and Restaurants, § 5, p. 903), it cannot be said that the category of motels is broad enough to include all hotels. Because of the extent and importance of hotel operations in this state over many years it is not reasonable to conclude that in enacting in 1953 the legislation now under consideration the Legislature intended to include hotels within its scope by the use of the language "and like establishments." Rather, the omission of express reference to hotels compels the conclusion that the legislative intent was to regulate establishments which, at the time of the enactment of the legislation, were commonly known as motels and motor courts as distinguished from hotels.[7]

---

[6]Sections 17560-17568 constitute article 3, chapter I of part 3 of division 7 of the Business and Professions Code. Article 3 is entitled "Motel and Motor Court Rate Signs." However, Business and Professions Code section 9 is as follows: "Division, part, chapter, article and section headings contained herein shall not be deemed to govern, limit, modify, or in any manner affect the scope, meaning or intent of the provisions of this code."

[7]In 1955 in legislating with respect to the subject of housing, the Legislature defined "motel" in Health and Safety Code section 18502 as follows: " 'Motel,' as used in this part, means a building of not more than one story containing six or more guest rooms or apartments, or combinations thereof, each of which has a separate, individual entrance leading directly from the outside of the building and is designed, used or intended wholly or in part for the accommodation of automobile transients." (Stats. 1955, ch. 91, p. 546.)

We hold that the legislative intent in enacting Business and Professions Code sections 17560-17568 was to regulate motels and motor courts and establishments commonly understood to be of that nature and not those establishments which were commonly understood to constitute hotels as distinguished from motels and motor courts. The question remains as to whether the current application of those provisions constitutes a violation of the constitutional concept of equal protection of the law.

In *Russell* v. *Carleson,* 36 Cal.App.3d 334, at page 343 [111 Cal.Rptr. 497], it was stated: "Directing our attention to the constitutional guarantee of equal protection of the laws, we observe that the latter guarantee 'compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' (*Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].) '[T]he Legislature is vested with wide discretion in making the classification and . . . its decision as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond rational doubt erroneous. [Citations.] . . . Only invidious discrimination offends the equal protection clause [citation]; the Legislature need not treat similar evils identically or legislate as to all phases of a field at once [citation]; legislative classification is permissible when it is based upon some distinction reasonably justifying differentiation in treatment [citations]; a classification is not void because it does not embrace within it every other class which might be included [citation] . . . .' (*People* v. *Aguiar, supra,* 257 Cal.App.2d at p. 604.) ' "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." [Citation.]' (*Dandridge* v. *Williams* (1970) 397 U.S. 471, 485 [25 L.Ed.2d 491, 502, 90 S.Ct. 1153].) (See also *Allied Stores of Ohio* v. *Bowers* (1959) 358 U.S. 522, 527-528 [3 L.Ed.2d 480, 485-486, 79 S.Ct. 437]; *In re Ricky H., supra,* 2 Cal.3d at p. 522.)"

■ However, as was said in *McLaughlin* v. *Florida* (1964) 379 U.S. 184, 191 [13 L.Ed.2d 222, 228, 85 S.Ct. 283]: "Judicial inquiry under the Equal Protection Clause . . . does not end with a showing of equal application among the members of the class defined by the legislation. The courts must reach and determine whether the classifications drawn in a statute are reasonable in light of its purpose—in this case, whether there is an arbitrary or invidious discrimination between those classes covered by Florida's cohabitation laws and those excluded."

█ The stated purpose of the legislation under consideration here is to prevent untrue, misleading, false, or fraudulent representations relating to rates being placed upon outdoor signs by motels, motor courts and like establishments. As was said in *Serve Yourself Gas etc. Assn.* v. *Brock,* 39 Cal.2d 813, at page 818 [249 P.2d 545]: "It is apparent upon its face that the primary purpose of this legislation is the prevention of misleading advertising, which purpose has long been deemed a proper subject for the exercise of the police power."

The question remains whether there is a reasonable distinction between hotels and motels with respect to the purpose of section 17564, so that the different treatment by the Legislature of motel rate advertising may be said to be justified. As noted hereinabove, this is a question of first impression in this state. However, the courts of California have had occasion to deal with questions respecting the validity of legislation regulating rate signs. Thus, in *People* v. *Osborne,* 17 Cal.App.2d Supp. 771 [59 P.2d 1083], the court struck down as unconstitutional a municipal ordinance prohibiting barbers from displaying any rate sign which was visible from outside a barber shop. In *Serve Yourself Gas etc. Assn.* v. *Brock, supra,* 39 Cal.2d 813, the Supreme Court upheld certain provisions of the Business and Professions Code requiring price signs, other than price signs on gasoline dispensing apparatus, to set forth in detail and in lettering as large as other lettering thereon the total price, including tax, and the grade of gasoline.

More recently, in *Carlin* v. *City of Palm Springs,* 14 Cal.App.3d 706 [92 Cal.Rptr. 535], the court struck down a Palm Springs ordinance which prohibited the use of outside rate signs. In *Carlin,* the court stated (14 Cal.App.3d at pp. 712-713): "The reasonable regulation of signs and billboards constitutes a valid exercise of the police power. (*National Advertising Co.* v. *County of Monterey,* 211 Cal.App.2d 375 [27 Cal.Rptr. 136]; *Metromedia, Inc.* v. *City of Pasadena,* 216 Cal.App.2d 270 [30 Cal.Rptr. 731]; *Burk* v. *Municipal Court,* 229 Cal.App.2d 696 [40 Cal.Rptr. 425]; *City of Los Angeles* v. *Barrett,* 153 Cal.App.2d 776 [315 P.2d 503]; see Gov. Code, § 38774.) The size, location, and other physical attributes of signs may be regulated in the interest of public safety. (See 7 McQuillin, Municipal Corporations (1968 rev. vol.) § 24,384, pp. 333-335.) The number of signs which may be posted, affixed or installed by a landowner or occupier may be limited. (See *State* v. *Hobson,* 46 Del. 381 [83 A.2d 846, 854, 858].) Signs that overhang or encroach upon a public highway or public property may be restricted or prohibited. (*McMahan's Furniture Co.* v. *City of Pacific Grove,* 219 Cal.App.2d 732,

735 [33 Cal.Rptr. 476].) Signs used to advertise prices, which may tend to deceive, are subject to the police power. (*Serve Yourself Gas etc. Assn.* v. *Brock,* 39 Cal.2d 813, 818-819 [249 P.2d 545].) Advertising on public streets through the use of exterior of delivery vehicles for advertising of a business other than that of the vehicle owner may be regulated. (*Railway Express Agency* v. *People of the State of New York,* 336 U.S. 106 [93 L.Ed. 533, 69 S.Ct. 463].) [¶] Notwithstanding the government's power to regulate signs, it is likewise true that the classification of advertising signs must not be arbitrarily made for the mere purpose of classification, but must be based upon some distinction, natural, intrinsic or constitutional, which suggests a reason for, and justifies, the particular legislation. (*City of Santa Barbara* v. *Modern Neon Sign Co.,* 189 Cal.App.2d 188, 193 [11 Cal.Rptr. 57].) However, there is a presumption in favor of the validity of the classification created by statute or ordinance. (*McMahan's Furniture Co.* v. *City of Pacific Grove, supra,* 219 Cal.App.2d 732, 735.) Where the validity of the legislative classification is fairly debatable, the legislative judgment must be allowed to control. (*Consolidated Rock Products Co.* v. *City of Los Angeles,* 57 Cal.2d 515, 522 [20 Cal.Rptr. 638, 370 P.2d 342].) The burden of proof rests upon the person attacking the statute to establish that there is no public nexus between such legislation and what it attempts to correct. (*McMahan's Furniture Co.* v. *City of Pacific Grove, supra,* p. 736.) [¶] Counterbalancing the government's right to regulate signs is the right of a property owner to make a reasonable use of his land or the right of a businessman to conduct a business. The right to advertise is a property right. (*Serve Yourself Gas etc. Assn.* v. *Brock, supra,* 39 Cal.2d 813, 819.) A business sign is a part of the business itself, just as the structure housing the business is part of it, and the authority to conduct a business carries with it the right to maintain a business sign on the premises, subject to reasonable regulation by the government. (*Metromedia Inc.* v. *City of Pasadena, supra,* 216 Cal.App.2d 270, 275.) The right to advertise also represents the exercise of the right of free speech. (*McKay Jewelers, Inc.* v. *Bowron, supra,* 19 Cal.2d 595, 605.) The right of free speech necessarily embodies the means used for its dissemination. (*Wollam* v. *City of Palm Springs,* 59 Cal.2d 276, 284 [29 Cal.Rptr. 1, 379 P.2d 481].)"

In *Carlin,* the court concluded that rate signs could not be classified separately from nonrate signs on the basis of public health, safety or morals. Furthermore, the court concluded that the ordinance could not be justified on the ground that it promoted the general welfare as there was no aesthetic or economic justification for distinguishing between rate and non-rate signs.

The ordinance in *Carlin* applied to all businesses. In *Eskind* v. *City of Vero Beach* (Fla. 1963) 159 So.2d 209, the Florida Supreme Court reviewed a city ordinance which prohibited "the use of outdoor signs to advertise rates for accommodations in motels, hotels, tourist homes and other types of lodging houses." (159 So.2d at p. 210.) In holding the ordinance to be unconstitutional, the Florida Supreme Court stated (159 So.2d at p. 211): "In the instant case, we can find no justification from an aesthetic viewpoint to prohibit motel signs advertising rates but permitting every other type of motel advertising sign imaginable. The motel which can offer an attractive rate is prohibited from announcing its rate advantage while more luxurious establishments are permitted to appeal by advertising signs announcing television, air conditioning, swimming pools, bars and grills and every other conceivable item of tourist attraction. Similarly, all motels are prohibited from advertising rates by signs while every other business in the vicinity is left free to appeal to the passing motorist with signs announcing charges for its goods or services. The motel cannot display its charges on signs, while restaurants, bars, filling stations, and every other type of business catering to travelers are permitted to do so. It seems obvious to us that a rate sign in front of a motel is no more offensive to the aesthetic sensibilities of the traveler or the community than would be a rate sign in the same immediate area advertising the charges of the other business activities. Similarly, a sign advertising rates is not aesthetically distinguishable from a sign advertising various aspects of a motel's services or conveniences." (See also *Abdo* v. *City of Daytona Beach* (Fla.App. 1962) 147 So.2d 598.)

In *Eskind* the court also concluded that the ordinance could not be upheld as tending to promote the general economic welfare of the community because in fact the ordinance tended to benefit the economic welfare of luxury motels and hotels which could not compete on the basis of price with more modest establishments. Thus, the court stated (159 So.2d at p. 212): "We have the view that the subject ordinance is nothing less than an attempted exercise of the police power to restrict competition between favored and unfavored segments of the same business activity."

On the other hand, in *Viale* v. *Foley* (1960) 76 Nev. 149 [350 P.2d 721], the court held that a statute which prohibited outdoor rate advertising by hotels, inns, motels or motor courts was a reasonable regulation and within the proper exercise of the police power to promote the health, safety, morals and general welfare of the public.

In each instance the legislation reviewed in *Carlin* v. *City of Palm Springs, supra,* 14 Cal.App.3d 706, *Eskind* v. *City of Vero Beach, supra,* 159 So.2d 209, *Abdo* v. *City of Daytona Beach, supra,* 147 So.2d 598, and *Viale* v. *Foley, supra,* 76 Nev. 149 [350 P.2d 721], actually prohibited the use of outside rate signs. The legislation in the instant case does not prohibit the use of outdoor or outside rate signs, but only seeks to regulate the use of rate signs to assure full disclosure of all rates charged by the affected establishments if such signs are used at all.

In *Adams* v. *Miami Beach Hotel Association* (Fla. 1955) 77 So.2d 465, the Florida Supreme Court upheld the constitutionality of a Florida statute which did not prohibit rate advertising but, rather, provided that it was a misdemeanor for the operator of "any hotel, apartment house, rooming house, motor court, tourist camp or trailer camp" to publish any advertisement which included a statement relating to room rates unless the advertisement included "(a) Whether the rate advertised is for single or multiple occupancy of the room; (b) The number of rooms available in each price level where such advertisement indicates varying rates; and (c) The dates or period of time during which such advertised rates are available." The court in *Adams* stated (77 So.2d at pp. 466-467): "The object of said act was to require hotels, motels and other rooming house operators to tell the whole story when they exercise the privilege of advertising their rooms. It is a matter of common knowledge that travelers are often confronted with a sign proposing comfortable lodging at very modest prices, say $2.50 to $4 per night. He pulls up to such a place and finds that all rooms at the advertised price are taken and that the only available lodging is two or three times the price advertised. It can be readily seen that the underlying purpose of the act is to break up this species of deception. Some of the hotels go so far as to advertise their rates and then when one gets in and registers he is charged a 'convention' rate, four or five times the regular rate advertised. . . . [¶] This Court is committed to the doctrine that the police power may be exercised to protect the public against loss from fraudulent or unscrupulous practices in commercial and financial transactions, particularly where the thing dealt with, or the method of dealing with it, adapts itself to, deception or fraudulent impositions on the public. Levy v. Stone, 97 Fla. 458, 121 So. 565; Bryan v. Cohen, 108 Fla. 421, 149 So. 211, 89 A.L.R. 1001; State ex rel. Hosack v. Yocum, supra. See also Goldstein v. Maloney, 62 Fla. 198, 57 So. 342. [¶] The act in question does not attempt to do more, and even in this it is not written in the imperative: it does no more than require full disclosure because a partial disclosure is impregnated with deception."

While the court's statement in *Adams* with respect to the purpose of the legislation might be applicable to section 17564 as well, there is a significant difference between the Florida statute and our Business and Professions Code counterpart. The Florida legislation applies equally to "hotel, apartment house, rooming house, motor court, tourist camp or trailer camp" operators. The California legislation applies only to "operators and owners of motels, motor courts, and like establishments."

Our research has revealed only two sister state cases directly in point on the equal protection issue raised herein. In the older case, *Alper* v. *Las Vegas Motel Association* (1958) 74 Nev. 135 [325 P.2d 767], the Nevada Supreme Court reviewed the validity of a county ordinance regulating rate signs used by motels. The appellants contended that there was no reasonable basis for a difference in classification between motels and hotels and that the ordinance prescribed unequal treatment discriminating against motels and was thus violative of the equal protection clause of the Fourteenth Amendment. In affirming the validity of the legislation, the court stated (325 P.2d at p. 769): "From the record it may reasonably be inferred that it was in the operation of motels as distinguished from hotels that Clark County mainly encountered the evil which the ordinance sought to eliminate. This being so the classification was not arbitrary and the ordinance may not be held unconstitutional under the requirement for equal protection of the laws."

More recently, in *People* v. *Sprengel* (1971) 176 Colo. 277 [490 P.2d 65], the Supreme Court of Colorado reviewed a similar Colorado statute which applied only to "auto camps," a term which was defined as "any auto or tourist camp, park or campsite, tourist court, auto court, auto hotel, motor court, [and] motor hotel." In ruling that the statute was unconstitutional, the court stated (490 P.2d at p. 67): "Here, the statute is designed to protect the traveling public from so-called 'bait advertising.' To pass the test of constitutionality, however, the classification implicit in the statute between 'auto camps' and hotels (and other omitted types of accommodations) must be reasonable and based upon a substantial difference which reasonably relates to the purpose of the statute. Obviously, if no reasonable basis for such classification appears, motel owners are being denied the equal protection of the law, and the statute is unconstitutional. *See* Dunbar v. Hoffman, *supra.* [171 Colo. 481, 468 P.2d 742.] [¶] In the past, 'motor courts' could be factually distinguished from hotels. The former usually offered no more than a room for the night, while the latter offered not only a room, but usually restaurant and lounge facilities, valet service and room service. The former catered only to the automobile traveler, while the latter catered primarily to rail, bus

and air travelers. In this regard, the demise of rail passenger traffic, the increase in the availability and use of rental automobiles, and the increase in ownership and use of automobiles in general should be noted. Today, however, motels and hotels can be distinguished in title only. Motels frequently are of the same size as larger hotels, and offer the same quality and types of services and accommodations to any traveler. That motels generally may be located in a closer proximity to highways than hotels is irrelevant. Motels and hotels both offer substantially identical services and accommodations to any traveler. Both cater to all travelers, and it would be unreasonable to say that motels cater to the automobile traveler while hotels do not. Indeed, it is not unusual to find a motel located only a few blocks from a hotel, and both equidistant from a highway. Under these circumstances, we are compelled to find that the statute denies motel owners the equal protection of the law."

Appellant contends that the California legislation is designed to protect the motoring public from deceptive advertising and thus the "Legislature in distinguishing motels, motor courts and other like establishments from hotels created a valid legislative classification . . . ." This reasoning presupposes that hotels do not seek the business of the motoring public and thus presumably do not attempt to appeal to the motoring public by rate signs. Such a proposition is patently untrue in California in the year 1975. As noted in *People* v. *Sprengel, supra,* (1971) 176 Colo. 277 [490 P.2d 65], the common use of rail transportation is virtually nonexistent. It is a well-known fact that people generally have recourse to the automobile as the common means of transportation. The extent of the rental car business attests to the fact that even the air traveler is very often dependent on the automobile once he touches ground. Just as motels have expanded their services to compete with hotels, hotels have added parking facilities to compete with motels.

The difficulty encountered in distinguishing between hotels and motels in terms of services and facilities offered and persons served is apparent from the evidence offered at the hearing held pursuant to the order to show cause why a preliminary injunction should not be granted.[8] William Paul Gawzner, president of Gawzner Corporation, one of the plaintiffs in this action, testified respecting the Miramar, an establishment owned by Gawzner Corporation, located on Highway 101 in Montecito. The trial court found the Miramar to be a hotel. The

[8]The preliminary injunction was filed on May 18, 1971. Thereafter there was no formal trial of the case. But, pursuant to stipulation the case was submitted "on the files and records in the . . . case, the transcript from the hearing on order to show cause, the evidence, and points and authorities therein presented."

Miramar is built on 15 acres of land and consists of approximately "forty-some buildings," including numerous bungalows, several large 2-story buildings containing many rooms, a main office, dining and cocktail facilities, and a large meeting hall. The Miramar offers parking close to guest rooms. It also has tennis, shuffleboard, horseshoe and croquet facilities, 500 feet of private beach, 2 swimming pools and a putting green. The Miramar maintains a large outdoor rate sign bearing the words "$6.00 and Up Miramar."

Plaintiff Earl Maynard Miley testified that he owned and operated the Barbara Hotel, 533 State Street, Santa Barbara, and was the lessee and operator of the Mar Monte Hotel, 1121 East Cabrillo Boulevard, Santa Barbara. The trial court found each of those establishments to be a hotel. There are one or more outside rate signs at those hotels.

Stephen A. Zoldos, also a plaintiff in this action, testified that he operated the Sea Breeze Motel located at 127 Bath Street, Santa Barbara, about a block and a half from the beach. The motel has 31 units and apparently offers no extra services or facilities. The rate sign there present bears the words "Add $2.00 per Person to $6.00 Single Rate."

While the Miramar is obviously different from the Sea Breeze in terms of size and diversity of services and facilities offered to the public, still the fact that each of these establishments is largely dependent upon the motoring public for business is apparent. If both motels and hotels rely to a large degree upon the motoring public for business it is discriminatory to restrict the outdoor rate advertising of one in an attempt to protect the motoring public and not to restrict the other's advertising of the same nature.

With respect to the avowed purpose of section 17564, hotels and motels are similarly situated. To discriminate between them as to outdoor or outside rate advertising is to deny motels the equal protection of the law. It thus appears that Business and Professions Code section 17564 is unconstitutional in its application to owners or operators of motels in the present case.

The order denying defendant's motion to dissolve the permanent injunction is affirmed.

Allport, J., and Potter, J., concurred.