[Civ. No. 64616. Second Dist., Div. Five. Aug. 12, 1982.]

TERESA CALDERONE, Plaintiff and Respondent, v.
RONALD POST et al., Defendants and Appellants.

COUNSEL

Terry B. Friedman, Elyse S. Kline and Anna V. Burns for Defendants and Appellants.

Calabro, Calabro, Calabro & Calabro and Anthony J. Calabro for Plaintiff and Respondent.

Ira Reiner, City Attorney, Garry R. Netzer and Claudia McGee Henry, Assistant City Attorneys, and Jolaine Harkless, Deputy City Attorney, as Amici Curiae.

OPINION

**STEPHENS, Acting P. J.**—This appeal arises out of an unlawful detainer action brought in the municipal court. It is before us on transfer from the Appellate Department of the Los Angeles Superior Court, pursuant to rule 62(a) of the California Rules of Court.

Plaintiff is the owner of a duplex located in the City of Los Angeles. She occupies one unit of the building and rents the second unit to defendants. Defendants' tenancy began in August 1977. On May 1, 1980, plaintiff notified them that she was increasing their rent by 7 percent. Defendants refused to pay the rent increase, telling plaintiff that the Los Angeles Rent Stabilization Ordinance (hereinafter Ordinance) prohibited her raising their rent until August 1980. Plaintiff refused tenders of rent payments which did not include the 7 percent increase. Upon defendants' continued refusal to pay the increase, plaintiff filed her unlawful detainer action.

Defendants challenged the habitability of their apartment; but the crux of the trial involved the issue of whether duplexes are subject to the regulations of the Ordinance. (Los Angeles Mun. Code, §§ 151.00-151.15)[1] The trial court held that duplexes were not covered by the Ordinance and awarded plaintiff monetary damages and possession of the premises. Defendants challenge that ruling.

Insofar as is pertinent to this appeal, the Ordinance requires owners of all covered rental units to register their property with the Communi-

[1]All statutory references are to the Los Angeles Municipal Code.

ty Development Department of the City of Los Angeles and to procure from the department, and prominently display on the premises, a registration statement as a precondition to demanding or accepting any rent. (§ 151.05.) Landlords of covered rental units are, with certain exceptions not here relevant, prohibited from increasing rents more than 7 percent or more frequently than once every 12 months. (§ 151.06(D).)

Plaintiff concedes that she did not register her duplex with the community development department. She does not dispute defendants' contention that if duplexes are covered by the Ordinance, the increase which she sought was premature.

At the time of trial, section 151.02, subdivision (M), defined "rental units" as "All dwelling units, efficiency dwelling units, guest rooms, and suites in the City of Los Angeles, as defined in Section 12.03 of this Code, rented or offered for rent for living or dwelling purposes...." The section further provided: "The term shall not include: 1. Dwellings, one family, except where three or more dwelling units are located on the same lot...."

Plaintiff contends that the exception applies whenever fewer than three dwelling units are located on one lot. This argument ignores the city council's use of the phrase "dwellings, one family" in the exception.

"Dwelling, One - Family" is defined by section 12.03 as "A detached dwelling containing only one dwelling unit." Section 12.03 also defines "Dwelling, Two - Family" as "A dwelling containing two dwelling units." "Dwelling Unit" is defined as "A group of two or more rooms, one of which is a kitchen, designed for occupancy by one family for living and sleeping purposes."

It seems obvious that the city council intended the section 12.03 definition of "Dwelling, One - Family" to apply to the use of that term in section 151.02, subdivision (M)(1).[2] A duplex—in the language of section 12.03—would be a "Dwelling, Two - Family." The exception contained in section 151.02, subdivision (M)(1), by its express terms, applies only to "Dwellings, one family" and then only if there are no more than two such dwellings on one lot. Had it been the city council's

---

[2]Even if that had not been the council's intent, the section 12.03 definition conforms to common understanding of the meaning of the term and would be the definition we would adopt.

intention to exempt duplexes from coverage of the Ordinance, it obviously would have worded section 151.02, subdivision (M)(1), to read: "Dwellings, one or two family. . . ."

 It is the obligation of the court to give effect to the plain meaning of the words chosen by a legislative body, and not seek for possible alternative meanings in the absence of ambiguity. (*People* v. *Cruz* (1974) 12 Cal.3d 562 [116 Cal.Rptr. 242, 526 P.2d 250].) Ambiguity exists with respect to section 151.02, subdivision (M)(1) only if the phrase "except where three or more dwelling units are located on the same lot" is read in isolation, rather than in context. Nonetheless, to the extent that even such ambiguity requires judicial interpretation of legislative intent, all of the available external indicia of intent also lead to the conclusion that the Ordinance was intended to cover duplexes.

Thus on December 13, 1978, the council's governmental operations committee sent a letter to the city attorney requesting him to draft rent control legislation exempting "single-family housing." On January 19, 1979, a motion was introduced in the council to amend the draft Ordinance to exempt apartment buildings of four units or less. This motion failed of adoption.

On April 23, 1979, the governmental operations committee filed a written report with the full council explaining that it was not the intention of the majority of the committee that bungalow courts be exempted from rent control. The report states: "The Majority Members of your Committee then instructed that an amending ordinance be drafted so as to exempt one-family dwellings *except where three or more are located on the same lot.* . . ." (Italics in original.) This report makes it clear that insertion of the italicized language in the Ordinance related to bungalow courts and had nothing to do with duplexes.

There is evidence in the record that both the community development department and the city attorney have consistently taken the position since passage of the Ordinance, that duplexes are covered and have so informed the public. "It goes without saying that the construction of a statute or regulation by the officials charged with their [*sic*] administration is highly significant and entitled to great weight. [Citations.]" (*City and County of San Francisco* v. *State of California* (1978) 87 Cal.App.3d 959, 967 [151 Cal.Rptr. 469].)

Finally, on April 13, 1982, the city council adopted Ordinance No. 156597 which modifies the Ordinance. Section 32 of Ordinance No. 156597 states:. "The Rent Stabilization Ordinance, in accordance with Council's intent, has always applied to housing accommodations in duplexes and condominiums. Nevertheless, a number of disputes have arisen between landlords and tenants as to whether the Rent Stabilization Ordinance applies to housing accommodations in duplexes and condominiums. The purpose of amending the definition of Rental Units in Section 151.02 as provided in Section 2 of this ordinance is to clarify Council intent in this regard."

As amended by Ordinance No. 156597, section 151.02, subdivision (M), insofar as is here relevant, now reads:

"Rental Units: All dwelling units, efficiency dwelling units, guest rooms, and suites, as defined in Section 12.03 of this Code, and duplexes and condominiums in the City of Los Angeles, rented or offered for rent for living or dwelling purposes.... The term shall not include:

"1. Dwellings, one family, except where three or more dwelling units are located on the same lot. This exception shall .not apply to duplexes or condominiums."

The only conclusion which this court can reasonably reach is that plaintiff's duplex was subject to the Ordinance at the time she attempted to raise defendants' rent, and that the increase was impermissible under the Ordinance.

■ For the first time in this court a question has been raised as to whether including duplexes under. the controls of the Ordinance, while excluding two detached single family units .on one lot, denies equal protection to duplex owners. It is, of course, axiomatic that legislatures enjoy wide discretion in drawing regulatory classifications (*Gawzner Corp.* v. *Minier* (1975) 46 Cal.App.3d 777 [120 Cal.Rptr. 344, 80 A.L.R.3d 726]); that they are free to recognize degrees of harm and to confine restrictions to those classes where the need is deemed the greatest (*California Pools* v. *Pazargad* (1982) 131 Cal.App.3d 601 [182 Cal.Rptr. 568]); and that a classification is not invalid merely because it does not include all other classes which might be included. (*Gawzner Corp.* v. *Minier, supra*, 46 Cal.App.3d 777.)

█ The legislative power to draw lines is not totally unlimited, however. Persons similarly situated with respect to the legitimate purposes of the law are entitled to similar treatment. (*Purdy & Fitzpatrick v. State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].) "Notwithstanding the government's power to regulate . . . it is likewise true that the classification . . . must not be arbitrarily made for the mere purpose of classification, but must be based upon some distinction, natural, intrinsic or constitutional, which suggests a reason for, and justifies, the particular legislation. [Citation.]" (*Carlin v. City of Palm Springs* (1971) 14 Cal.App.3d 706, 712 [92 Cal.Rptr. 535].) █ The burden of proof rests with the person challenging the constitutionality of the statute to show that there is no rational nexus between the legislation and the public purpose it attempts to accomplish. (*Gawzner Corp. v. Minier, supra,* 46 Cal.App.3d 777, 786.)

█ In the instant case plaintiff never had a need to challenge the constitutionality of the Ordinance, because the trial court ruled in her favor on the issue of coverage. Defendants have attempted to establish the constitutionality of the classification in this court, but the evidence which they have offered is inconclusive. We are given a copy of a December 6, 1978, report to the governmental operations committee from the community development department, housing division, which states: "There is no valid rationale for exempting units based on size, age, owner-occupancy, as this data forms a random pattern which does not confirm a standard basis for exemptions. The only factor which might be reasonably assumed as an exemption category are those high priced units renting above a certain threshold level." Elsewhere the report tates: "It should also be emphasized that any proposal to exempt small units would be unjustified based on the experience of the Hotline."[3]

Counterbalancing these conclusions is an informal opinion letter from the city attorney to the housing division suggesting a "legal rationale" for exempting single family units from coverage of the Ordinance. Three justifications are offered: first, that it is a traditional exemption in other jurisdictions which have adopted rent control legislation; second, that if subjected to regulation the owner of a single family unit would have the option of selling the property to a potential owner-

---

[3]A telephone hotline was established to deal with inquiries from the public concerning a temporary rent freeze ordinance which preceded enactment of the Ordinance here under review.

occupier, thereby removing it from the rental market;[4] and third, that the increased costs of administration if single family units were included would justify their exclusion. There is also statistical data in the record on the number of rented single family homes in the city (111,589), the number of duplexes in the city (70,154), and the number of duplex units which are rented (51,607), as opposed to the number which are owner occupied (17,547).[5] What is totally absent from the record before us is any information as to the number of lots there are in the city containing two single family units, the number of such units which are owner occupied, the number which are rented, the number which are occupied by employees of the owner, or the number which are vacant—through choice of the owner or otherwise. There is also no data on average rental prices charged for housing in the category of two single family units on a single lot.

Given this state of the record, we believe that plaintiff should have an opportunity to attempt to establish, if she can, that the council's inclusion of duplexes under the Ordinance, while excluding two single family units on a single lot, denies equal protection to duplex owners.

The judgment is reversed with directions to conduct further proceedings consistent with the views expressed herein.

Ashby, J., and Hastings, J., concurred.

---

[4]A similar argument would not be applicable to owners of two single family dwellings on one lot—or at least no more applicable to them than to duplex owners.

[5]We note a mathematical discrepancy of 1,000 in the figures which have been given to us.