[No. A035905. First Dist., Div. Five. Jan. 26, 1988.]

DAGMAR SEARLE et al., Plaintiffs and Appellants, v.
CITY OF BERKELEY RENT STABILIZATION BOARD,
Defendant and Respondent;
JENNIFER TAYLOE et al., Real Parties in Interest and
Respondents.

COUNSEL

Dagmar Searle, in pro. per., for Plaintiffs and Appellants.

Thomas A. Seaton as Amicus Curiae on behalf of Plaintiffs and Appellants.

Manuela Albuquerque, City Attorney, Timothy J. Lee, Deputy City Attorney, and Brian Kelly for Defendant and Respondent.

OPINION

KING, J.—In this case we uphold the provision of a rent control ordinance which precludes unregistered landlords and their successors from recapturing, upon later registration, annual rent increases lost by prior nonregistration. Such a provision does not violate the Constitution or any statute when the ordinance also provides that any landlord can, upon registration, petition for an individual rent adjustment and obtain a fair return on investment.

Dagmar and John Searle and Eleanor Swift (Landlords) appeal from a judgment denying a peremptory writ of mandamus and affirming the decision of the Berkeley Rent Stabilization Board (Board) that they are not entitled to annual general rent adjustments forfeited by their unregistered predecessor in interest. We affirm.

## FACTS

The Rent Stabilization and Eviction for Good Cause Ordinance passed by Berkeley voters in 1980 provides for annual general rent adjustments (AGA's), as approved by the Board, based on citywide average increases in operating costs, which are available to all complying landlords (§ 11). The ordinance also provides for individual rent adjustments (IRA's) available by the petition of a landlord based upon a particularized showing of increased operating costs such that a landlord is not receiving a fair return on investment (§ 12).

The Tenants Rights Amendments Act of 1982 (Measure G) further provides that no AGA shall be effective if the landlord "[h]as failed to completely register by September 1, except as provided in section Sub-11.g. below. . . . [¶] g. The amount of an upward general adjustment for which a landlord shall be eligible shall decrease by ten (10) percent per month for each month beyond December 1 for which the landlord fails to register. [¶] h. A landlord who is ineligible to raise rents under an upward general adjustment for an entire calendar year shall not be eligible to raise rents under that particular general adjustment in future years."

The California Supreme Court has held the ordinance constitutionally valid on its face. (*Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644 [209 Cal.Rptr. 682, 693 P.2d 261].)

On October 31, 1984, Landlords purchased a previously unregistered 17-unit apartment building in Berkeley and immediately began the registration process. In January 1985, they reduced rents to the lawful ceiling (1980 base rent), refunded overpayments they had already collected, and notified tenants of rent increases commencing March 1 incorporating AGA's established by the Board in 1981, 1982 and 1983. Pursuant to a petition by several tenants, a hearing examiner determined and the Board affirmed on appeal that Landlords were ineligible for AGA's already lost by the prior owner. The trial court denied Landlords' petition for a writ of administrative mandamus.[1]

---

[1] While pursuing this appeal, Landlords also filed a petition for an IRA, then appealed the hearing examiner's decision which adjusted the base year net operating income (NOI) upward 30 percent resulting in a rent increase exceeding the disputed AGA's. The Board's deci-

## DISCUSSION

### I

█ Landlords claim they have been deprived of their due process right to fair notice that "a non-culpable registered landlord can be denied accrued AGA's," because the regulations' "plain meaning" is that the sanctions imposed in section 11, subdivisions (g) and (h), apply only to noncomplying landlords. (*Calderone* v. *Post* (1982) 134 Cal.App.3d 1008, 1012 [185 Cal.Rptr. 52].)

The flaw in this argument—indeed, in all of Landlords' arguments—is the underlying assumption there are "accrued AGA's" to be granted or denied these Landlords, as if the previous landlord had merely forgotten to take them or made a tactical decision to "bank" them temporarily. The plain meaning of section 11.h. makes it abundantly clear that at the time Landlords purchased the building the AGA's in question had already been permanently lost. The prior owner could not sell—and presumably Landlords did not pay for—rights the prior owner did not own. Nothing in the ordinance or the voter information pamphlet indicates a future landlord—guilty or innocent—can recapture lost AGA's. Nor would such an interpretation, allowing a noncomplying landlord to reinstate the right to lost AGA's by transferring title temporarily or permanently, comport with the purpose of encouraging compliance by punishing unregistered owners.

Moreover, the ordinance defines "landlord" as used in section 11.h. to include "successor" which, when interpreted in the "common popular way," as it must be when a measure is adopted by a vote of the people (*Creighton* v. *City of Santa Monica* (1984) 160 Cal.App.3d 1011, 1018 [207 Cal.Rptr. 78]), includes these Landlords. █ Even if the term were ambiguous, the Board's interpretation is entitled to great weight and must be upheld if it has a reasonable basis. (*Ontario Community Foundations, Inc.* v. *State Bd. of Equalization* (1984) 35 Cal.3d 811, 816 [201 Cal.Rptr. 165, 678 P.2d 378].)[2] ·█ Landlords were sufficiently put on notice by the terms of the ordinance that they could not recapture lost AGA's.

---

sion on appeal remanded the matter to the hearing examiner whose decision on remand, granting a 35 percent increase in the base year NOI, has been appealed by both parties.

[2] Contrary to the contention of amicus curiae that section 11.h. is a penal provision which must be narrowly construed, the only criminal penalties for violation of the ordinance are set out in section 19. Nor is recently enacted Civil Code section 1947.7, prohibiting sanctions against landlords in "substantial compliance" with local rent stabilization programs, applicable. There is no allegation the prior landlord was in substantial compliance with the registration requirement when she permanently forfeited the 1981-1983 AGA's. Landlords are entitled to AGA's accruing from the date of compliance, but their current compliance does not somehow average out with their predecessor's noncompliance to equal "substantial compliance" over the entire period.

## II

■ Landlords contend the Board's interpretation of section 11.h., whereby subsequent registered landlords may not recapture lost AGA's, has a "harsh impact, approaching confiscation" which "outweigh[s] reasonable goals of punishment, regulation and deterrence" (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 401, 403 [149 Cal.Rptr. 375, 584 P.2d 512]) because it is a penalty aimed at "profoundly depressing" the sale price of unregistered property which is "unnecessary" in light of other provisions designed to encourage compliance.

The problem with this contention is that even if the Board's interpretation of section 11.h. were designed to depress the sale price of unregistered property, and even if that were the result in this instance (which Landlords have not alleged), and even if this constituted an unreasonable and oppressive penalty, it would punish sellers, not buyers, of unregistered property. Thus, these Landlords lack standing to challenge this alleged penalty from which they have "neither suffered nor [are] about to suffer any injury." (*California Water & Telephone Co.* v. *County of Los Angeles* (1967) 253 Cal.App.2d 16, 23 [61 Cal.Rptr. 618].)[3]

■ Citing our decision in *Cotati Alliance for Better Housing* v. *City of Cotati* (1983) 148 Cal.App.3d 280, 283 [195 Cal.Rptr. 825], Landlords next maintain the Board's interpretation of section 11.h. is unconstitutionally confiscatory, because it has "a necessary effect of lowering rents more than could be reasonably considered to be required for its stated purpose." It makes no sense, of course, to speak of a provision's "necessary effect" except in the context of a facial challenge such as that presented in *Cotati* and in *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 165 [130 Cal.Rptr. 465, 550 P.2d 1001], on which *Cotati* relied. But the California Supreme Court has upheld the facial validity of the current Berkeley ordinance, including section 11.h. (*Fisher* v. *City of Berkeley, supra,* 37 Cal.3d at pp. 651, 654, fn. 2.) The court in *Fisher* concluded both the "fair return on investment standard" embodied in section 12, subdivision (c)(8) (*id*. at p. 679 & fn. 32), and the rent adjustment procedures (*id*. at p. 687) permit the Board to avoid confiscatory results. (*id*. at pp. 686-687.)

---

[3] Although the sale price of income property may result from many factors, the income the property can produce is certainly significant, since it affects the rate of return on the buyer's investment. An unregistered landlord, having lost the benefit of AGA's in prior years, may therefore be unable to sell his or her property for the same price it would bring if it had been registered. Indeed, in a period of greatly increasing real estate values in California, this rent control law itself, will certainly lessen the amount by which the fair market value of property in Berkeley would otherwise increase. However, by registering, the new purchaser can petition for an IRA and receive a fair return on investment.

Therefore, what Landlords must mean is that in their particular case application of section 11.h. has a confiscatory result. In that regard the Board counselled them, "If the May 31, 1980 rents do not provide respondents with a fair return on their investment, the remedy is to file an IRA. petition."[4]

But Landlords believe *Fisher* v. *City of Berkeley, supra,* 37 Cal.3d at pages 687-688, guarantees access to both tiers of the rent adjustment process because the court there found the addition of a comprehensive scheme for granting annual across-the-board adjustments material in establishing the constitutional validity of the current ordinance. However, the *Fisher* court did not require the Board to grant AGA's to every landlord any more than it required it to grant them every year. (*Id*. at p. 688, fn. 45.) Rather it held the general availability of AGA's to most landlords when warranted by inflation was "the exact mechanism found wanting" in *Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d at pages 169-172, where case-by-case adjudication of every rent ceiling adjustment on every one of the city's thousands of rental units (in combination with several other provisions) "put the Board in a procedural straitjacket" (*id*. at p. 171) making unreasonable delays inevitable. By contrast, the current ordinance reduces the job of adjusting rent ceilings to manageable proportions by "focusing . . . the adjudicative process upon issues which cannot fairly be resolved in any other way" (*ibid*.), such as that which Landlords here present.

As the trial judge explained, "the real issue is whether or not this matter [previous nonregistration resulting in permanently forfeited AGA's] has already been taken into account in the price you paid for the property, so it relates to your fair return," and "that issue should first be handled through the administrative agency."

The record contains no evidence of the purchase price of the building, apparently because Landlords believe "this proceeding is not concerned with the particular financial situation of these Appellants."[5] This proceeding

---

[4] See footnote 1, *ante.*

[5] Amicus curiae contends "the Board has not been interested in the purchase price negotiated by buyer and seller," based on section 12, subdivision (e), of the ordinance which provides in pertinent part: "Except for cases of individual hardship as set forth in Subsection 12.i. of this Ordinance, no individual upward adjustment of a rent ceiling shall be authorized by the Board because of the landlord's increased interest or other expenses resulting from the sale of the property, if at the time the landlord acquired the property, the landlord could have reasonably foreseen that such increased expenses would not be covered by the rent schedule then in effect." Section 12, subdivision (i), which the *Fisher* court called a "safety valve" which "overrides all other provisions of the ordinance" (37 Cal.3d at p. 692), provides: "No provision of this Ordinance shall be applied so as to prohibit the Board from granting an individual rent adjustment that is demonstrated necessary by the landlord to provide the landlord with a fair return on investment." Nothing in these provisions warrants amicus curiae's

is concerned with little else. If, as one would expect, the effect of prior nonregistration on current legal rents was a factor in negotiating the purchase price, then as Landlords themselves insist, *ante,* that price must have been "deeply depressed" resulting in a benefit to Landlords. If, on the other hand, they ignored the fact the building was not registered and paid too much for it, they cannot expect the Rent Board or the courts to remake a bad bargain. Their only hope is to convince the Board they are not receiving a fair return on their investment for reasons which were unforeseeable at the time of purchase. As Landlords surmise this is an uphill battle, given their apparent failure to make any attempt to ascertain whether, despite the clearly contrary language of section 11.h., permanently lost AGA's might nevertheless be recaptured. The mechanism provided for such requests is the IRA process.

Landlords' objections to the IRA procedure are all without merit.[6] Their due process and equal protection arguments, once again, are predicated on a false assumption. It is disingenuous—to put it kindly—to assert they are being asked to qualify individually for "duly passed AGA's" which other "registered complying landlords" automatically receive, when at the time these particular AGA's were duly passed, Landlords were not the owners of this building, registered, complying, or otherwise. Notwithstanding their typographical adamancy, these Landlords are not being "relegated to the IRA precedure *in lieu of the accrued AGA's,*" nor has anyone suggested "lost AGA's can be recouped . . . via an IRA action." The AGA's are gone; if Landlords are not receiving a fair return on their investment, they should be allowed to increase rents via an IRA petition to obtain a fair return.

Finally, Landlords question the motive of the trial judge and the wisdom of a policy barring recapture of lost AGA's by new compliant Landlords, neither of which is subject to this court's review. (*Hale* v. *Morgan, supra,* 22 Cal.3d at p. 398.)

---

conclusion that "the sales price is not relevant to any action taken by the Board in granting rent increases."

[6] As the Board points out, they are also premature. Because Landlords are still going through the IRA process (see *supra,* fn. 1), their assertion of its inadequacy is perforce largely speculative. The ludicrous effect of requesting judicial intervention *in medias res* is illustrated by a glance at Landlords' supplemental brief. Ostensibly an answer to this court's question about the mootness of this appeal if Landlords' petition for an IRA is successful, it also contains a lengthy rehash of Landlords' argument that the IRA procedure is "a totally inadequate substitute for AGA's," based on allegations that—simply put—so far it isn't going too well. As the trial court advised Landlords, the proper procedure is to obtain a final administrative determination which then "may be reviewable by a court under Writ of Mandate."

## III

Landlords submit the Board's interpretation of section 11.h. constitutes an unreasonable restraint on alienation (Civ. Code, § 711, *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943 [148 Cal.Rptr. 379, 582 P.2d 970]), a contention squarely rejected in *Fisher* v. *City of Berkeley, supra,* 37 Cal.3d at pages 692-693, where the court held "Civil Code section 711 does not, and was never intended to, apply to municipal ordinances."

## IV

Amicus curiae alleges "perpetual denial of prior.annual general adjustments to owners who have complied with the law violates Civil Code sections 3358 and 3359." Under this rubric, amicus curiae mounts a facial challenge to section 11.h., relegating the issue actually raised in this case—the inability of *new* owners to recapture lost AGA's—to a footnote. Moreover, sections 3358 (limiting liquidated damages) and 3359 (damages must be reasonable) have no conceivable relation to this case. Whatever "windfall" tenants may incidentally receive, it cannot be construed as "monthly damages."

## V

In *Cotati Alliance for Better Housing* v. *City of Cotati, supra,* 148 Cal.App.3d at page 293, we suggested that failure of a rent control ordinance to provide a fair return on investment "might well violate prohibitions against the taking of private property for public use without just compensation contained in the Fifth Amendment to the United States Constitution and article I, section 19, of the California Constitution." Since whether or not Landlords are receiving a fair return is precisely the issue which is before the Board in the IRA procedure, and a final determination has not yet been made, the issue is not ripe for adjudication. (*MacDonald, Sommer & Frates* v. *Yolo County* (1986) 477 U.S. 340 [91 L.Ed.2d 285, 293-294, 106 S.Ct. 2561, 2571].)

### DISPOSITION

The trial court properly affirmed the Board's decision to deny purchasers of a formerly unregistered building the right to recapture permanently lost AGA's.

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.

A petition for a rehearing was denied February 17, 1988, and appellants' petition for review by the Supreme Court was denied April 27, 1988.