[No. A075553. First Dist., Div. Five. July 22, 1997.]

152 VALPARAISO ASSOCIATES et al., Plaintiffs and Appellants, v. CITY OF COTATI et al., Defendants and Respondents.

## COUNSEL

James S. Burling and R. S. Radford for Plaintiffs and Appellants.

Walter & Pistole, Veronica A. F. Nebb and Jeffrey A. Walter for Defendants and Respondents.

## OPINION

**PETERSON, P. J.**—Appellants 152 Valparaiso Associates, 402 Grand Avenue Associates, and 378 Belmont Associates contend the trial court wrongly sustained a demurrer and dismissed this lawsuit, which alleges that the rent control system of respondents the City of Cotati and the Cotati Rent Appeals Board has accomplished a taking of appellants' property without just compensation, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 19 of the California Constitution. We agree and, therefore, vacate the judgment of dismissal.

### I. FACTS AND PROCEDURAL HISTORY

Appellants are the owners of residential rental property in Cotati. Their property is subject to respondents' rent control ordinance and regulations.

The stated purpose of respondents' rent control laws includes the preservation of an affordable stock of residential rental units in the city for low-income renters, renters who are aged or on fixed incomes, and students.

However, according to the allegations of the first amended complaint and the United States Census Bureau figures referred to therein, respondents' rent control laws have not advanced those goals. The complaint supported by

the census data referenced and incorporated therein alleges: (1) The city has suffered a loss of its housing stock of rental apartments, even though every comparable city in Northern California without rent control has experienced an increase in its rental housing supply; (2) the number of low-income renters has "dropped dramatically" in the city, even though in cities without rent control, the number of such low-income renters has increased; (3) the "reduced availability of affordable housing caused by the Rent Ordinance" has caused the number of college students living in the city to decline. Appellants contend that respondents' rent control laws, to which appellants' property is subject, have, thus, "failed to substantially advance" the stated objectives of the rent control laws, since the results those laws have produced are simply the "gentrification" of Cotati.

Appellants, who are subject to those rent control laws, made certain capital improvements to their rental property. They sought a rent increase sufficient to give them a fair return on their investment in those capital improvements. The rent board refused to grant any such increase. As a result, appellants allege the rate of return on their investments will be zero, resulting in an unconstitutional taking of their investment property.

In sum, appellants allege that respondents' rent control ordinances effected an unconstitutional taking of appellants' property, because respondent's failed to substantially advance their stated public goals and denied appellants a fair return on their investment.

The trial court sustained without leave to amend a demurrer to appellants' first amended complaint encompassing such allegations. Appellants filed a timely appeal from a resulting judgment dismissing that complaint.

## II. Discussion

 The trial court erred in sustaining the demurrer to the first amended complaint. Appellants have alleged facts which, if true, would tend to establish that respondents' rent control laws have effected a taking of appellants' property, in violation of the federal and California Constitutions. We vacate the dismissal and remand with instructions to overrule the demurrer.

### A. Background of Rent Control Decisions

This court (Division Five of the First Appellate District) has had many occasions to review the tortured history of rent control in California, most recently in *City of Berkeley* v. *City of Berkeley Rent Stabilization Bd.* (1994)

27 Cal.App.4th 951, 958-961 [33 Cal.Rptr.2d 317] (*Berkeley Rent*). We summarize that history very briefly here, in order to provide necessary legal background.

Our Supreme Court first overturned a rent control law as unconstitutional in *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 169 [130 Cal.Rptr. 465, 550 P.2d 1001] (*Birkenfeld*). The *Birkenfeld* court held that the Berkeley rent control law before it "drastically and unnecessarily restricts the rent control board's power to adjust rents, thereby making inevitable the arbitrary imposition of unreasonably low rent ceilings. It is clear that if the base rent for all controlled units were to remain as the maximum rent for an indefinite period many or most rent ceilings would be or become confiscatory." (*Ibid.*)

In light of *Birkenfeld*, the Berkeley rent laws were amended to provide for periodic upward adjustments of rent levels, in order to prevent the gradual confiscation of property. Our Supreme Court subsequently upheld those amended laws against a facial challenge in *Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 679-684 [209 Cal.Rptr. 682, 693 P.2d 261] (*Fisher*). The *Fisher* court specifically noted that under the revised ordinance, the rent board had the power to adjust rents upward in order to allow landlords a reasonable return on their investment. (P. 683, fn. 39.) The *Fisher* court also cautioned, however: "We must stress . . . the limited scope of our inquiry in facial challenges . . . . As we made clear in *Birkenfeld*, whether rental regulations are fair or confiscatory depends ultimately on the result reached." (P. 679.)

Berkeley was not the only city to enact rent control laws, and our Supreme Court was not the only court which was required to deal with these issues. This court (Division Five) first dealt with the Cotati rent control laws in *Cotati Alliance for Better Housing* v. *City of Cotati* (1983) 148 Cal.App.3d 280 [195 Cal.Rptr. 825] (*Cotati I*). In *Cotati I*, we held such a rent control ordinance is not facially unconstitutional if it provides landlords " 'a fair and reasonable return on their investment.' " (P. 286.) Of course, the corollary to that holding is that a rent control ordinance which fails to actually provide a fair and reasonable rate of return in practice is unconstitutional, because it has taken private property without proper compensation. As we noted in *Cotati I*, the failure of a rent control law to provide a fair return on investment "might well violate prohibitions against the taking of private property for public use without just compensation contained in the . . . United States Constitution and article I, section 19, of the California Constitution." (P. 293.)

We were later required to elaborate on these principles, in the context of the revised Berkeley rent control laws, in two more published cases. In

*Searle* v. *City of Berkeley Rent Stabilization Bd.* (1988) 197 Cal.App.3d 1251, 1259 [243 Cal.Rptr. 449], we noted that the issue of whether landlords were receiving a fair rate of return under the Berkeley rent control laws was the subject of ongoing litigation in the trial court and, therefore, still "not ripe for adjudication."

■ After the issue did ripen, we addressed it on the merits in *Berkeley Rent, supra*, 27 Cal.App.4th at page 984, where we concluded: "The judicial response to over two decades of . . . rent control controversies has consistently established these principles: Rent control schemes are unconstitutional if they deprive a landlord of a fair return on his investment; that condition [requiring a fair rate of return] if not present in an ordinance will be implied therein; and whether rental regulations are fair or (unconstitutionally) confiscatory is determined by the result they produce." Under *Berkeley Rent*, therefore, it is the *result produced*, not merely the result intended, which must be examined in determining whether a rent control ordinance has unconstitutionally taken private property without just compensation. (Accord, *Fisher, supra*, 37 Cal.3d at p. 679.)

B. *Application of Precedent and Constitutional Principles to the Case at Bench*

■ The constitutional focus on the results produced by rent control laws is critical in this case. ■ Appellants' first amended complaint alleged certain results were produced by respondents' rent control laws; and for purposes of ruling on this appeal from a judgment of dismissal following the sustaining of a demurrer without leave to amend, we are required to treat those results as legally established. (See *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) "[A]ppellants' ability to prove their allegations is not a factor for our consideration . . . ." (*Klein* v. *Children's Hospital Medical Center* (1996) 46 Cal.App.4th 889, 892 [54 Cal.Rptr.2d 34] (*Klein*).)

■ We are, therefore, required to assume, for purposes of ruling on this appeal, that the results produced by rent control in Cotati were as follows. Contrary to the stated purposes of respondents' rent control program, the results it produced were that poor people, the aged, students, and those on fixed incomes were gradually driven out of Cotati; and the stock of affordable rental apartments was not preserved, but instead was significantly depleted. In addition, appellants allege and we are required to assume that the rent board, contrary to the requirements of providing a fair rate of return, has decided appellants' rate of return on their capital improvements to their property should be zero. Under those posited factual circumstances, we are

asked to determine whether it is an unconstitutional taking for the rent board to deny any rate of return on such investment to property owners, resulting in poor people and others who need rental housing being driven from the city. We conclude appellants have stated a claim for an unconstitutional taking of their property under the posited facts.

■ As the federal and California Supreme Courts have repeatedly observed, "The application of a general . . . law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests, [citation], *or* denies an owner economically viable use of his land, [citation]." (*Agins* v. *Tiburon* (1980) 447 U.S. 255, 260 [100 S.Ct. 2138, 2141, 65 L.Ed.2d 106] (*Agins*), italics added; accord, *Ehrlich* v. *City of Culver City* (1996) 12 Cal.4th 854, 870 [50 Cal.Rptr.2d 242, 911 P.2d 429].)
■ In the present case, appellants have alleged a state of facts which satisfies both prongs of this *Agins* test, by contending and offering to prove that respondents' rent control laws have not substantially advanced legitimate state interests and have denied appellants any rate of return on their investments in capital improvements to their property. Under the more recent federal Supreme Court cases, general land use regulations will be held to have effected a regulatory taking if the results produced by the regulatory scheme do not advance a legitimate state interest. (See *Nollan* v. *California Coastal Comm'n* (1987) 483 U.S. 825, 834 [107 S.Ct. 3141, 3147, 97 L.Ed.2d 677] (*Nollan*); *Dolan* v. *City of Tigard* (1994) 512 U.S. 374, 385, fn. 6 [114 S.Ct. 2309, 2316, 129 L.Ed.2d 304] (*Dolan*).) ■ Under the so-called *Nollan/Dolan* test, which also stems from the language of *Agins*, a property owner may challenge a regulatory taking if it does not advance a legitimate state interest, even if the taking does not deprive the property owner of *all* economically viable use of the property.

■ Respondents, however, argue that this *Nollan/Dolan* test does not apply, and that appellants were required to also allege their rental property has lost all economic value as a result of rent control. We reject this argument. It is inconsistent with the precise wording of *Agins, supra,* 447 U.S. at page 260 [100 S.Ct. at page 2141], which held that a taking may be established from either lack of advancement of a legitimate state interest "or" loss of economic value. Respondents' argument is also inconsistent with the actual holdings in *Nollan* and *Dolan*, where the federal Supreme Court found there could be unconstitutional takings from the application of general land use regulations to a property, even though the property was not deprived of *all* of its economic value. (See *Nollan, supra,* 483 U.S. at pp. 834-842 [107 S.Ct. at pp. 3147-3151]; *Dolan, supra,* 512 U.S. at pp. 383-385 & fn. 6 [114 S.Ct. at pp. 2315-2316].) Respondents' argument is also inconsistent with *Lucas* v. *South Carolina Coastal Council* (1992) 505 U.S.

1003, 1016-1026 [112 S.Ct. 2886, 2893-2899, 120 L.Ed.2d 798], which applied the *Agins* test in the disjunctive, by holding that a land use regulation was invalid because it deprived the owner of all economically viable use of the property, even though the regulation might serve a legitimate state interest. Respondents' argument is likewise inconsistent with the holdings of our Supreme Court and this court (Division Five), which have held that rent control laws must allow a fair return on investment (here, the capital investment in the property) to avoid an unconstitutionally confiscatory taking. (See *Birkenfeld, supra,* 17 Cal.3d at p. 169; *Fisher, supra,* 37 Cal.3d at p. 679; *Berkeley Rent, supra,* 27 Cal.App.4th at p. 984.)

Respondents rely for their argument solely upon certain dicta drawn out of context from a decision by the Fourth Appellate District, Division One, in *Del Oro Hills* v. *City of Oceanside* (1995) 31 Cal.App.4th 1060, 1076 [37 Cal.Rptr.2d 677] (*Del Oro Hills*). In *Del Oro Hills,* the court held a developer could not mount a *facial* constitutional challenge alleging that a local land use ordinance restricting growth (subsequently found to be invalid) had been an unconstitutional taking, because the ordinance had served a legitimate state interest. (Pp. 1078-1081.) The court also held the developer could not mount a constitutional challenge to the ordinance *as applied,* because the issue was not ripe for review in light of the fact that the developer had not yet exhausted its administrative remedies. (*Id.* at p. 1077.) In dicta, the court also relied upon pre-*Lucas,* pre-*Dolan* authority dealing with the need to exhaust administrative remedies (*Gilbert* v. *City of Cambridge* (1st Cir. 1991) 932 F.2d 51, 57) to suggest that "an ordinance is safe from a *facial* challenge if it preserves, through a permit procedure or otherwise, some economically viable use of the property." (*Del Oro Hills, supra,* 31 Cal.App.4th at p. 1076, italics added.) The *Del Oro Hills* court later elaborated on this dicta concerning administrative remedies by opining, "we cannot accept Del Oro's theory that satisfaction of one element of the *Agins* test (i.e., that there was an invalid regulation) is enough to establish a taking as a matter of law. In *Nollan, Lucas,* and *Dolan,* the United States Supreme Court's analysis of the taking issue inextricably interlinked both the regulation's validity and the question of whether any economically beneficial use of the property remained in light of the regulation. In light of later authority, *Agins* did not establish an 'either/or' type of test." (P. 1079.)

No published decision of a California appellate court has extended the *Del Oro Hills* dicta, dealing with the need to exhaust administrative remedies before mounting a facial challenge to the constitutionality of a land use law, to apply instead to an ordinance which, as *applied* following exhaustion of administrative remedies, as here, allegedly deprives property of its value for no legitimate state interest. Similarly, no published decision of a California

appellate court has interpreted the *Del Oro Hills* dicta as a holding that even after the "Four Horsemen" of *Agins, Lucas, Nollan*, and *Dolan*, a land use ordinance cannot constitute a taking unless it *totally* deprives the property of *all* possible economic value. We do not so interpret this dicta, either. Such an interpretation would be inconsistent with *Agins, Lucas, Nollan,* and *Dolan*, which taken together established and applied an "either/or" test by stating that "The application of a general . . . law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests, [citation], *or* denies an owner economically viable use of his land, [citation]." (*Agins, supra*, 447 U.S. at p. 260 [100 S.Ct. at p. 2141], italics added.) To the extent respondents argue the *Del Oro Hills* dicta, if shorn from the particular factual context of that case, might be inconsistent with the holdings of the federal Supreme Court, we must respectfully decline to follow *Del Oro Hills*.

In the context of the present case, there are also compelling constitutional reasons underlying our analysis. ■ As the federal Supreme Court reemphasized most recently in *Dolan*: "One of the principal purposes of the Takings Clause is 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " (512 U.S. at p. 384 [114 S.Ct. at p. 2316], quoting from *Armstrong* v. *United States* (1960) 364 U.S. 40, 49 [80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554].) ■ If housing the poor and other vulnerable groups is a legitimate public burden—and we do not doubt that it is—then " 'in all fairness and justice' " and under the federal and California Constitutions, appellants contend this burden must be borne by the public as a whole, not just owners of rental property. It is not only unconstitutional, it is also— appellants suggest—futile and self-defeating to attempt to finance relief for the poor by regulatory exactions on local owners of private rental property. Such exactions might be justified as attempts to support a legitimate state interest, but they could still constitute takings. In addition, if the true purpose of rent control is indeed providing housing to the poor, then an examination of the actual results produced by such policies might be relevant to show they do not in fact substantially advance this interest. If that were shown, then this might suggest such rent control policies actually serve other purposes, at the expense of property owners, who are not so numerous as tenants. The danger that private property will be taken for an alleged public use by a local electoral majority is ever present in a rent control scheme; and we must examine the results produced, not simply the noble intentions, of such programs to determine their true constitutional effect. (See *Fisher, supra*, 37 Cal.3d at p. 679; *Berkeley Rent, supra*, 27 Cal.App.4th at p. 984.)

We must for these reasons also reject respondents' argument that their demurrer was properly sustained because appellants' allegations—that rent

control in Cotati has not served any legitimate state interest—are simply allegations and are only supported by the most recent United States Census Bureau data. Respondents seem to contend that the most recent census data is not current enough to support such allegations, and that a demurrer may be sustained unless appellants present some more recent, incontrovertible proof in the pleadings. There are numerous problems with this argument. First, for purposes of a demurrer, the courts must accept all properly pleaded allegations as true. We are not concerned at this stage with the means by which appellants might prove their allegations. (See *Klein*, *supra*, 46 Cal.App.4th at p. 892.) Second, respondents' argument that the most recent United States census data, issued to the public 17 months before the filing of this lawsuit and within a few months of the rent board action challenged here, lacks evidentiary significance because another decennial census will be conducted in the year 2000, ignores pertinent state and federal authority. The most recent United States decennial census data is favored by an evidentiary presumption, which requires "clear and convincing" evidence to rebut it. (See *McNeil* v. *Springfield Park Dist.* (7th Cir. 1988) 851 F.2d 937, 946; cf. also *Garza* v. *County of Los Angeles* (9th Cir. 1990) 918 F.2d 763, 773, fn. 3 [This presumption does not apply to the creation of a remedy, only a finding of liability.].)

California courts also routinely rely on the data from the most recent federal decennial census, even though it may necessarily be somewhat out of date, because it is still the best available source of such information. (See, e.g., *Wilson* v. *Eu* (1992) 1 Cal.4th 707, 743 [4 Cal.Rptr.2d 379, 823 P.2d 545]; *Assembly* v. *Deukmejian* (1982) 30 Cal.3d 638, 677 [180 Cal.Rptr. 297, 639 P.2d 939].)

We further observe that respondents are free if they wish, in later trial court proceedings, to attempt to introduce contrary evidence of subsequent census data, if it exists, allegedly showing, inter alia, that despite the documented exodus from Cotati by the poor and other groups reflected in the most recent federal decennial census, poor people have in fact more recently flocked to Cotati to live in an increasing inventory of rental apartments; that respondents' rent control laws are applied so as to lure private investors and builders; or that the latter will receive a reasonable rate of return on their investment.

We need only hold here that respondents were proscribed from barring appellants' allegations and proof by filing a demurrer, based on allegations such contrary evidence was or would be supported by more recent population data. (See *Klein*, *supra*, 46 Cal.App.4th at pp. 892-893.)

Finally, respondents contend appellants' challenge to the actions of the rent board, in not granting them any return on their investment, was somehow barred by the applicable statute of limitations because the federal

census data was almost three years old when they first became available. The trial court rejected this illogical argument as "without legal merit." We agree with the trial court on this point. The most restrictive statute of limitations which might arguably apply here is Code of Civil Procedure section 1094.6, subdivision (d), which requires the filing of a petition for administrative mandate within 30 days of the agency's delivery of the administrative record. Appellants met that deadline. The fact that the federal census data was more than 30 days old is irrelevant to the statute of limitations.

The time has arrived to litigate the truth or falsity of appellants' contentions that Cotati's application of its rent control program has unconstitutionally confiscated landlords' property. Confiscation may or may not have occurred in this case; and respondents' rent control ordinance may or may not have substantially advanced some legitimate state interest, while avoiding the unlawful taking of landlords' property. Those issues remain to be determined under the allegations of appellants' pleading, combining a first amended complaint for inverse condemnation and a petition for writ of administrative mandate; and we remand this matter to the trial court for that purpose.

III. DISPOSITION

The judgment of dismissal is vacated. The matter is remanded to the trial court with instructions to overrule the demurrer.

Haning, J., and Jones, J., concurred.

A petition for a rehearing was denied August 18, 1997, and respondents' petition for review by the Supreme Court was denied October 29, 1997. Kennard, J., was of the opinion that the petition should be granted.